IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WONDERLAND NURSERYGOODS CO., LTD., <br><br> Plaintiff, <br><br> vs. <br><br> THORLEY INDUSTRIES, LLC, *d/b/a* 4MOMS, <br><br> Defendant. | Civil Action No. 12-196 <br> Judge Nora Barry Fischer |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Wonderland Nursery Goods Co. ("Wonderland") brings this action against Defendant Thorley Industries, LLC d/b/a 4MOMS ("Thorley") for the alleged infringement of U.S. Patent No. 8,047,609 ("the '609 Patent"). (Docket No. 1 at 1). The '609 Patent is entitled "Infant Rocking Chair and Driving Device for Driving the Same." *Id.* at 2. Presently pending before the Court is Thorley's Motion to Strike Portions of the Expert Report of Scott D. Hampton, of Hampton IP and Economic Consultants. (Docket Nos. 112, 114-1, 118, 121). Wonderland has retained Dr. Hampton to assist the jury in calculating the alleged lost profit and reasonable royalty damages that would fully compensate Wonderland for Thorley's alleged infringement of the '609 Patent. (Hampton Report, Docket No. 114-1 at 7). Dr. Hampton is a Certified Public Accountant who has licenses from California, Washington, and Utah. *Id.* at 5.

Thorley filed its Motion to Strike Portions of Dr. Hampton's Expert Report on July 2, 2013, (Docket No. 112), which it has restyled in its Reply Brief, filed on July 26, 2013, as a *Daubert* Motion to Exclude portions of Dr. Hampton's testimony because that testimony is not

1

"based on sound economic proof." (Docket No. 121 at 4). Wonderland filed its opposition on July 17, 2013. (Docket No. 118). On August 26, 2013, the Court heard oral argument on Thorley's Motion, (Docket Nos. 143-45), and for the following reasons, said Motion is DENIED.

## II. BACKGROUND

### A. Motion to Strike

As an initial matter, this Court issued an earlier opinion in this Case, dated June 7, 2013, denying a Motion to Strike Portions of the Expert Report of William W. Clark, filed by Wonderland, (Docket No. 73), because an "expert report is not a pleading, nor for that matter a brief or affidavit, and therefore cannot be stricken by the Court." (Docket No. 93). *See Wonderland Nurserygoods Co. v. Thorley Indus. LLC*, 2013 U.S. Dist. LEXIS 80003, at *4 (W.D. Pa. June 7, 2013). Thorley's instant Motion before the Court, (Docket No. 112), is very similar to Wonderland's earlier Motion to Strike, (Docket No. 73).

As this Court outlined in its previous Memorandum Opinion, (Docket No. 93), to the extent that Thorley brings its Motion as a "motion to strike," Thorley's motion is denied. Federal Rule of Civil Procedure 12(f) governs the Court's authority to strike items from the record, and it permits striking matters only from pleadings. FED. R. CIV. P. 12(f); 5C WRIGHT, A. MILLER & M. KANE, *Federal Practice and Procedure* § 1380 (3d ed.). Here, Dr. Hampton's expert report is not a pleading, brief, or affidavit, and therefore cannot be stricken by the Court.

### B. Daubert Challenge

For completeness, the Court will also briefly examine Thorley's arguments in support of a "motion to exclude" Dr. Hampton's testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993). Rule 702 provides that an expert witness may provide opinion testimony if it will assist the trier of fact and "(1) the

testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Thorley moves to exclude portions of the expert report of Dr. Hampton on the issue of lost profits. (Docket No. 113). According to Thorley, Dr. Hampton "does not provide sound economic proof to establish the relevant baby swing market" and "does not provide sound economic proof to establish the market share percentages of the baby swing market." *Id.* at 2. Thorley maintains that Dr. Hampton's lost profits opinion is based on his discussion with one Graco employee,[1] Kerry Strzelecki, and that Ms. Strzelecki's alleged statements to him contradict her deposition testimony. *Id.* at 4. Thorley also asserts that Dr. Hampton has not verified his discussions with Ms. Strzelecki, he has not referenced his conversations with a marketing representative, and he has not performed independent research. *Id.* at 4-5.

In its Reply Brief, Thorley clarifies that it seeks to exclude Dr. Hampton's testimony on lost profits because the anticipated testimony would not meet the standards of Rule 702. (Docket No. 121 at 4-6 & n.2). Thorley contends that Dr. Hampton's opinions do not satisfy *Daubert* because Dr. Hampton does not provide sound economic proof to support his ultimate conclusions. *Id.* at 5. Thorley asserts that under *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999), the Federal Circuit "requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture" for damages calculations. Thorley also asserts that under *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 689 (E.D. Tex. 2010) (J. Rader), the proper remedy is for the Court to exclude that testimony under Rule 702. (Docket No. 121 at 6).

---

[1] Graco sells a baby swing called the Sweetpeace that competes with the mamaRoo. (Docket No. 113 at 6).

In its opposition, Wonderland asserts that Thorley does not question Dr. Hampton's qualifications or competency as an expert or the reliability of his testimony. (Docket No. 118 at 7). Wonderland contends that the evidence upon which Dr. Hampton relies constitutes sufficient "sound economic proof" because it is of the type that experts routinely rely upon in formulating opinions. *Id.* at 8. Wonderland maintains that cross-examination is the proper forum for issues relating to the adequacy or sufficiency of evidence that an expert relies on. *Id.* at 8.

## III. Legal Standard

It is well settled that in patent infringement cases, "[t]he patentee bears the burden of proving damages." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). "In determining damages, a jury may rely on expert testimony." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373 (Fed. Cir. 2013). "District courts, as gatekeepers, must nevertheless ensure that all expert testimony is rooted in firm scientific or technical ground." *Id.* (citing *Daubert*, 509 U.S. at 589-90). "[T]he Federal Rules of Evidence require that an expert's testimony be the product of reliable principles and methods applied to sufficient facts or data." *Id.* "Whether proffered evidence should be admitted in a trial is a procedural issue not unique to patent law." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003). Therefore, regional circuit law governs, and the Third Circuit has directed that "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). "[T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." *Id.*

However, "*Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." *United*

*States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004). "As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process–competing expert testimony and active cross–examination–rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *Id.* (internal quotation marks omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. *Daubert* "neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance." *Mitchell*, 365 F.3d at 244. *Daubert* "demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Id.*

Furthermore, "[d]ata relied on by the expert 'need not be admissible for the opinion to be admitted' if experts in the field would reasonably rely on such data." *Power Integrations, Inc.*, 711 F.3d at 1373 (quoting FED. R. EVID. 703). "[W]hile an expert's data need not be admissible, the data cannot be derived from a manifestly unreliable source." *Id.* "Rule 703 provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" *Daubert*, 509 U.S. at 595 (quoting FED. R. EVID. 203).

IV. **Analysis**

In the instant case, Thorley does not question Dr. Hampton's qualifications, only the reliability of Dr. Hampton's analysis. Therefore, the only issue before the Court is whether Dr. Hampton's analysis is based on reliable methods and principles and whether he reliably applies those methods and principles to the facts in this case. Thorley maintains that Dr. Hampton does

not quantify the "but for" causation in his lost profits analysis because his opinion is based on assumptions that the "infant rocking chair market" is segmented by "swing motion" and price. (Docket No. 113 at 6). Thorley argues that a (Thorley) mamaRoo purchaser would not have opted for a (Wonderland) Sweetpeace as opposed to other alternatives. (Docket No. 121 at 7). Thorley also contests Dr. Hampton's opinion that a consumer would only have had three options for "high price point" infant rocking chairs (the mamaRoo, the Sweetpeace, and a Fisher Price product), and that consumers would have purchased the Sweetpeace and the Fisher Price product in proportion to their respective historical market shares. *Id.* at 7.

However, this Court finds that even if an expert does not have a concrete methodology, the expert's testimony can still assist the average juror and prove to be helpful. *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 286 F.R.D. 266, 271 (W.D. Pa. 2012). Rule 703 clearly allows Dr. Hampton to consider inadmissible hearsay if it contains facts or data "of a type reasonably relied upon by experts in the particular field." *See Daubert*, 509 U.S. at 595. Thorley raises no argument that accountants do not rely on conversations with manufacturers and retailers in determining estimates for market share or consumer behavior within a market.[2]

To the extent that Thorley relies on *Grain Processing Corp.* for the requirement that damages require sound economic proof, it is instructive that now-Chief Judge Rader went on further to note: "Without the infringing product, a rational would-be infringer is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether." *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999). "[O]nly by comparing the patented invention to its next-best available alternative(s)–regardless of whether the alternative(s) were actually produced and sold

---

[2] As noted earlier, Dr. Hampton is a Certified Public Accountant, and would therefore rely on standards reasonably relied upon by accountants in calculating economic damages in intellectual property litigation matters. *See* Hampton Report at 2, Docket No. 114-1 at 6.

during the infringement–can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward, had the infringer's activities not prevented him from taking full economic advantage of this right." *Id.* "[T]his analysis necessarily involves some approximation of the market as it would have hypothetically developed absent infringement." *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002).

Here, Dr. Hampton opines that Graco's Sweetpeace is the next-best available non-infringing alternative because he found only two products in the alternative swing market with a price above a target price point, the mamaRoo and the Sweetpeace. (Docket No. 113 at 6-7). Thorley, by contrast, fails to raise any argument contesting whether the Sweetpeace could be the next-best available non-infringing alternative. *See Grain Processing Corp.*, 185 F.3d at 1351.

Even though Thorley contests Dr. Hampton's price point, that price point derives from Thorley's own Swing Manufacturers Model Pricing Chart. (Docket No. 118 at 11-12 (citing THOR 008474, Docket No. 120-3 at 5)). Thorley cannot contest that this price point for swing manufacturers is potentially significant, when Thorley uses it in its own internal analyses of competitors in the baby swing market. *Id.* Thorley further presents no authority to support its argument that no connection exists between manufacturer knowledge and consumer behavior. (Docket No. 121 at 8). Despite Thorley's position that Dr. Hampton had a duty to obtain better data, such as a survey or poll of consumers about their purchasing decisions, (*id.*), *Daubert* does not actually require outside research as long as Dr. Hampton has relied on data of the type reasonably relied on by experts, i.e., accountants, in his field. *See Power Integrations, Inc.*, 711 F.3d at 1373.

Thorley's reliance on *IP Innovation L.L.C. v. Red Hat, Inc.*, is also unpersuasive because the allegedly patented feature in that case did not drive consumer demand. *See* 705 F. Supp. 2d

687, 690 (E.D. Tex. 2010). In *IP Innovation L.L.C.*, which involved the calculation of a reasonable royalty under the entire market rule, the court found that "damages are recoverable only 'if the patented apparatus was of such paramount importance that it substantially created the value of the component parts.'" *Id.* at 689 (quoting *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995)). Therefore, "the patent-related feature" must be the "basis for customer demand." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (quoting *Rite-Hite Corp.*, 56 F.3d at 1549)). In *IP Innovation L.L.C.*, however, the patented feature was not the basis for consumer demand because "users [did] not buy the accused operating systems for their workspace switching feature." 705 F. Supp. 2d at 690 ("Most of Red Hat's and Novell's accused sales come from their Server products, the majority of which are not connected to a display and thus do not take advantage of the workspace switching feature.").

Here, by contrast, Dr. Hampton's report has set forth a reasonable hypothesis that the "alternative motion" mechanism is the precise feature that distinguishes the mamaRoo and the Graco Sweetpeace in the market for baby rockers. Thorley, moreover, fails to raise any argument that it is another feature that drives the consumer demand for the mamaRoo. (Docket No. 121). The mamaRoo's own marketing material even distinguishes the mamaRoo with the slogan: "It moves like you do$^{TM}$." (Hampton Report at 19, Docket No. 114-1 at 23). Thorley itself describes the mamaRoo as a device that does not just "vibrate" or "swing," but also has an "alternative motion" that "bounces up and down and sways from side to side, just like parents do when comforting their babies." *Id.* at 24 (citing Thorley website). Similarly, the "SweetPeace has a unique motion in that it replicates the parent's style of motion to soothe the baby." *Id.* (citing conversation with Ms. Strzelecki). Dr. Hampton, moreover, as an expert, can rely on inadmissible hearsay as long as it is of the type reasonably relied on by experts in his field. *See*

FED. R. EVID. 703. As noted, *Daubert* "neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance." *Mitchell*, 365 F.3d at 244. *Daubert* "demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Id.* Here, Wonderland maintains that accountants in Dr. Hampton's field routinely rely on "interviews with company personnel," (Docket No. 118 at 9), Thorley fails to raise any argument to the contrary, and the Court agrees. Thorley is left to challenge same with "[v]igorous cross-examination" and "presentation of contrary evidence" at trial, followed by "careful instruction on the burden of proof," which are "the traditional and appropriate means of attacking shaky but admissible evidence." *See Daubert*, 509 U.S. at 596.

In sum, the Court finds that Thorley has not established that Dr. Hampton's methods were not reliable or were not reliably applied to the facts of this case under Rule 702, at this stage of the litigation. Dr. Hampton may proceed to testify at trial.

## V. Conclusion

For the aforementioned reasons, Thorley's Motion to Strike Portions of the Expert Report of Dr. Hampton, (Docket No. 112), is DENIED. An appropriate Order follows.

> */s Nora Barry Fischer*
> Nora Barry Fischer
> United States District Judge

Date: December 5, 2013
cc/ecf: All counsel of record