IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| WONDERLAND NURSERYGOODS CO., LTD., | ) |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | Civil Action No. 12-196 |
| vs. | ) | Judge Nora Barry Fischer |
|  | ) |  |
| THORLEY INDUSTRIES, LLC, *d/b/a* 4MOMS, | ) |  |
|  | ) |  |
|  | ) |  |
| Defendant. | ) |  |

# MEMORANDUM OPINION

I. INTRODUCTION

Plaintiff Wonderland Nursery Goods Co. ("Wonderland") brings this action against Defendant Thorley Industries, LLC d/b/a 4MOMS ("Thorley") for the alleged infringement of U.S. Patent No. 8,047,609 (the "'609 Patent") (filed Dec. 3, 2010), (Docket No. 1-2 at 2). The '609 Patent is entitled "Infant Rocking Chair and Driving Device for Driving the Same." *Id.* Presently pending before the Court is Thorley's Motion for Summary Judgment of Invalidity of Claims 12, 13, 19, and 20 of the '609 Patent under the written description requirement of 35 U.S.C. § 112. (Docket No. 101 at 13). Thorley does not challenge Claim 14 under § 112. *Id.*

Thorley filed its instant Motion on July 1, 2013, (Docket Nos. 100-02), Wonderland filed its Opposition on July 29, 2013, (Docket Nos. 132-33), and Thorley filed its Reply on August 14, 2013, (Docket No. 136-37). On August 26, 2013, the Court heard oral argument on said Motion, (Docket Nos. 143-45).[1] Upon consideration of the parties' positions, and for the following reasons, Thorley's Motion is DENIED.

---

[1] The Court prepared and considered a transcript, (Docket No. 145), as well as a videotape of the arguments.

1

## II. BACKGROUND

The '609 Patent is an invention directed at "infant rocking chairs," more specifically "a driving device for driving a seat body of an infant rocking chair to move back and forth as well as up and down."[2] *See* '609 Patent col. 1 ll.15-19, (Docket No. 1-2 at 19). The '609 Patent discloses that "conventional infant rocking chairs" produce only "back-and-forth" or "up-and-down" motion, whereas a "curved swinging motion in which a back-and-forth motion is combined with an up-and-down motion" is preferable to "impart greater comfort to the infant." *Id.* col. 1 ll.21-27, (Docket No. 1-2 at 19).

Although Thorley challenges four claims, the essential issue concerns whether the specification of the '609 Patent sufficiently describes the "motion mechanisms" claimed in the invention. (Docket No. 101 at 12). Thorley asserts that every example of a motion mechanism disclosed in the specification of the '609 Patent includes both a "guide path unit" and a "movable member," whereas the claims of the '609 Patent do not include either of these terms. (Docket No. 136 at 7). Wonderland asserts that the specification of the '609 Patent does not require a "guide path unit" and a "movable member" in all cases. (Docket No. 132 at 13-14).

Claim 12, which is representative for the issues in dispute, is reproduced below:

> An infant rocking chair comprising:
>     a seat body;
>     a bottom seat;
>     a base disposed between said seat body and said bottom seat and movable on said bottom seat;
>     a supporting element connected to said base for supporting said seat body;

---

[2] The Court limits its discussion to the facts necessary to resolve the present Motion. For a more robust discussion of this case, see the Court's Claim Construction Opinion, (Docket No. 58), and forthcoming Memorandum Opinion on Thorley's Motion for Summary Judgment of Invalidity and the parties' Cross-Motions for Summary Judgment on the issue of infringement.

>           a **first motion mechanism** disposed between said base and
> said bottom seat for driving said base to move back and forth on
> said bottom seat; and
>           a **second motion mechanism** disposed between said
> supporting element and said bottom seat for driving said
> supporting element to move up and down relative to said base.

*See* '609 Patent col. 7 l.59 to col. 8 l.11, (Docket No. 1-2 at 22) (emphasis added). As the claim language illustrates, although Claim 12 describes a first motion mechanism and a second motion mechanism, there is no claim language describing a "guide path unit" or a "movable member." *See id.* Claims 13, 19, and 20 have similar language for either or both the first motion mechanism and the second motion mechanism. *See id.* col. 8 ll.12-17, 39-59, (Docket No. 1-2 at 22). At the claim construction, the parties agreed that the claim term, "motion mechanism" meant "a combination of machine parts." *See* Revised (and corrected) Joint Disputed Claim Terms Chart, (Docket No. 46 at 2). The parties did not dispute whether the meaning of "motion mechanism" should also include a "guide path unit" and a "movable member." *Id.*

The specification of the '609 Patent describes three preferred embodiments. It contains a shorter description of each embodiment within the Summary of the Invention, *see* '609 Patent col. 1 l.32 to col. 2 l.48, (Docket No. 1-2 at 19), and a longer description of each embodiment within the Detailed Description, *see id.* col. 3 l.15 to col. 6. l.45, (Docket No. 1-2 at 20-21). The Summary of the Invention describes all three preferred embodiments as containing motion mechanisms that include "guide path units" and "movable members." *See id.* col. 1 l.34 to col. 2 l.48, (Docket No. 1-2 at 19). By contrast, the Detailed Description does not limit its description of the three preferred embodiments to motion mechanisms with "guide path units" and "movable members." *See id.* col. 3 l.15 to col. 6. l.45, (Docket No. 1-2 at 20-21).

For instance, when it describes the first and second motion mechanisms of the second preferred embodiment, the Summary of Invention uses the terms, "guide path unit" and "movable member":

> a first motion mechanism including a first **guide path unit** disposed at the bottom seat, and a first **movable member** disposed on the base and movable along the first **guide path unit**; and
>
> a second motion mechanism including a second **guide path unit** disposed at the bottom seat, and a second **movable member** disposed fixedly on a bottom end of the supporting element and movable along the second **guide path unit**.

*See* '609 Patent col. 2 ll.3-10 (emphasis added), (Docket No. 1-2 at 19). However, the Detailed Description discloses the first motion mechanism of the second preferred embodiment using the terms, "straight guiding rods" and "first rollers":

> The first motion mechanism 8 includes the **straight guiding rods** 81 and the **first rollers** 82. When the threaded rod 7 is rotated by the power mechanism 6, the second projecting tooth 27 of the base 2 is moved along the second helical slot 72. Hence, the first rollers 82 reciprocate along the straight guiding rods 81, thereby resulting in a back-and-forth motion of the base 2 relative to the bottom seat 12.

*See* '609 Patent col. 5 ll.41-47, (Docket No. 1-2 at 21) (emphasis added). Similarly, the Detailed Description uses different terms to describe the second motion mechanism of the third preferred embodiment, i.e., "resilient damping unit" and "curved guiding rods."

> In this embodiment, the second motion mechanism 5 further includes a **resilient damping unit** 54, and each of the **curved guiding rods** 53 has a pivot end 531 connected pivotally to the bottom seat 12, and a free end 532 pivotable upwardly and downwardly about the pivot end 531. The resilient damping unit 54 includes two coiled compression springs 541, two spring-receiving members 542, and a spring-retaining member 543.

*See* '609 Patent col. 6 ll.18-25, (Docket No. 1-2 at 21) (emphasis added). The Detailed Description further explains the second motion mechanism of the second preferred embodiment

using the terms "first helical slot" and "first projecting tooth," *see id.* col. 5 ll.47-48, (Docket No. 1-2 at 21), but it also discloses that "the first helical slot constitutes the second guide path unit" and that the "first projecting tooth … constitutes the second movable member." *See id.* col. 5 ll.34-38, (Docket No. 1-2 at 21).

The '609 Patent is a continuation of an earlier filed patent, which issued as U.S. Patent No. 7,845,728 (the "'728 Patent") (filed June 28, 2007), (Docket No. 103-2). Although all of the claims in the '728 Patent require guide path units and movable members, *see id.* col. 6 l.47 to col. 8 l.29, (Docket No. 103-2 at 21-22), the specification of the '728 Patent is nearly identical to that of the '609 Patent, meaning that the '728 Patent also describes three preferred embodiments in a Summary of the Invention and a Detailed Description section. *See id.* col. 1 l.29 to col. 2 l.47, col. 3 l.15 to col. 6 l.45, (Docket No. 103-2 at 19-21). The Detailed Description of the '728 Patent contains all of the same terms as discussed above with regard to the Detailed Description of the '609 Patent. *Compare* '728 Patent col. 3 l.15 to col. 6 l.45, (Docket No. 103-2 at 20-21), *with* '609 Patent col. 3 l.15 to col. 6. l.45, (Docket No. 1-2 at 20-21).

### III. LEGAL STANDARD

"[T]he purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification.'" *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 920 (Fed. Cir. 2004) (quoting *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345 (Fed. Cir. 2000)). "This requirement protects the quid pro quo between inventors and the public, whereby the public receives 'meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time.'" *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1377 (Fed. Cir. 2009) (quoting *Enzo Biochem, Inc. v.*

*Gen–Probe Inc.*, 323 F.3d 956, 970 (Fed. Cir. 2002)). The applicant "must also convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991). The relevant invention is "*whatever is now claimed*." *Id.* at 1564 (emphasis in original).

In 2010, the Federal Circuit reviewed the written description requirement *en banc*, holding that "§ 112, first paragraph, contains two separate description requirements: a written description [i] of the invention, and [ii] of the manner and process of making and using the invention." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1344 (Fed. Cir. 2010) (en banc) (internal quotation marks omitted). The written description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Id.* at 1351 (quoting *Vas–Cath Inc. v. Mahurkar*, 935 F.2d at 1563). "[T]he test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* Although the term possession is not very precise, the "hallmark of written description is disclosure." *Id.* To that end, "the test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Id.* This inquiry must determine whether the specification "describe[s] an invention understandable to that skilled artisan and show[s] that the inventor actually invented the invention claimed." *Id.*

"Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the nonmoving party." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012), *cert. denied*, 132 S. Ct. 2442 (2012); *see also Ariad Pharms., Inc.*, 598 F.3d at 1355 (internal quotation marks omitted) ("A determination that a patent is invalid for failure to

meet the written description requirement of 35 U.S.C. § 112, ¶ 1 is a question of fact, and we review a jury's determinations of facts relating to compliance with the written description requirement for substantial evidence.").

"[T]he level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Ariad Pharms., Inc.*, 598 F.3d at 1351. "While broadening claims during prosecution to capture a competitor's products is not improper, the written description must support the broadened claims." *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013). Indeed, "disclosure of a species may be sufficient written description support for a later claimed genus including that species." *Id.* at 1344 (quoting *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1124 (Fed. Cir. 2004)). "For generic claims, we have set forth a number of factors for evaluating the adequacy of the disclosure, including the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, [and] the predictability of the aspect at issue." *Ariad Pharms., Inc.*, 598 F.3d at 1351 (internal quotation marks omitted). Under *Bilstad v. Wakalopulos*:

> If the difference between members of [a species] is such that [a] person skilled in the art would not readily discern that other [species] would perform similarly to the disclosed members, i.e., if the art is unpredictable, then disclosure of more species is necessary to adequately show possession of the entire genus.

*Bilstad v. Wakalopulos*, 386 F.3d 1116, 1125 (Fed. Cir. 2004). "In other words, predictability is a factual issue judged on a case-by-case basis." *Synthes USA, LLC*, 734 F.3d at 1344.

"Because a patent is presumed to be valid, *see* 35 U.S.C. § 282 (1994), the party asserting invalidity has the burden of showing invalidity by clear and convincing evidence." *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999); *see also Microsoft*

*Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011) (holding that "§ 282 requires an invalidity defense to be proved by clear and convincing evidence"); *Ariad Pharms., Inc.*, 598 F.3d at 1354 ("A patent is presumed to be valid, and this presumption only can be overcome by clear and convincing evidence to the contrary.").

## IV. ANALYSIS

In the instant case, Thorley challenges Claims 12-13 and 19-20 of the '609 Patent based on the written description requirement under 35 U.S.C. § 112, alleging that the specification does not sufficiently describe the claimed "motion mechanisms." (Docket No. 101 at 12). Thorley asserts that all three preferred embodiments of the '609 Patent describe motion mechanisms requiring a "guide path unit" and a "movable member," *see* '609 Patent col. 1 l.34 to col. 2 l.48, (Docket No. 1-2 at 19), whereas the claims at issue do not include either of these terms. (Docket No. 101 at 12). Wonderland responds that the specification of the '609 Patent, *see* '609 Patent col. 3 l.15 to col. 6. l.45, (Docket No. 1-2 at 20-21), does not require a guide path unit and a movable member in all cases. (Docket No. 132 at 20). As Wonderland's response illustrates, Thorley relies on the Summary of the Invention portion of the specification, *see* '609 Patent col. 1 l.34 to col. 2 l.48, (Docket No. 1-2 at 19), but does not completely account for the descriptions contained within the Detailed Description portion of the specification, *see* '609 Patent col. 3 l.15 to col. 6 l.45, (Docket No. 1-2 at 20-21). Thorley, however, cannot rely solely on the Summary of the Invention because the written description requirement is an "objective inquiry into the four corners of the specification." *See Ariad Pharms., Inc.*, 598 F.3d at 1351. The written description requirement is a factual question, and all facts must be viewed in the light most favorable to the non-moving party, i.e., Wonderland. *See Streck, Inc.*, 665 F.3d at 1285. In this Court's estimation, because the Detailed Description discusses several motion mechanisms without using

the terms, "guide path unit" or "movable member," Thorley has failed to establish that no reasonable fact finder could find the specification to be sufficient under § 112.

Turning to these aforementioned motion mechanisms, the Court first addresses the second motion mechanism of the second preferred embodiment. The Detailed Description clarifies that the "first helical slot" is actually a "guide path unit," and that the "first projecting tooth" is a "second movable member." *Compare* '609 Patent col. 2 ll.7-10, (Docket No. 1-2 at 19), *with id.* col. 5 ll.35-52, (Docket No. 1-2 at 21). Therefore, the second motion mechanism of the second preferred embodiment includes a guide path unit and a movable member.

As for the first motion mechanism of the second preferred embodiment, however, the Detailed Description does not use guide path units or movable members to define the terms, "straight guiding rods" and "first rollers." *Id.* col. 5 ll.41-42, (Docket No. 1-2 at 21). Similarly, when describing the second motion mechanism of the third preferred embodiment, the Detailed Description does not use guide path units or movable members to define the terms, "resilient damping unit" and "curved guiding rods." *Id.* col. 6 ll.18-25, (Docket No. 1-2 at 21). The Detailed Description thus discusses two motion mechanisms without using the terms, "guide path unit" or "movable member." *Id.* col. 5 ll.41-42, col. 6 ll.18-25, (Docket No. 1-2 at 21).

Thorley maintains that despite the use of different terms within the Detailed Description for these two motion mechanisms, both the Summary of the Invention and the Detailed Description refer to the same three embodiments; thus the Summary of the Invention clarifies that the two aforementioned motion mechanisms also require a guide path unit and a movable member. (Docket No. 136 at 5-6). Thorley contends that it is not necessary to repeat the terms, "guide path unit" and "movable member" when they were already used in the Summary of the Invention. *Id.* at 6-7. Thorley's arguments, however, do not establish that no reasonable fact

finder could find that the specification of the '609 Patent discloses at least one motion mechanism without a guide path unit or a movable member. Instead, a reasonable fact finder could conclude that the specification discloses a broader range of claims than the Summary of the Invention reveals, *see Streck Inc.*, 665 F.3d at 1285, because the Detailed Description explains at least two motion mechanisms in different ways without using the terms, "guide path unit" and "movable member." See '609 Patent col. 3 l.15 to col. 6. l.45, (Docket No. 1-2 at 20-21).

To the extent that Thorley relies on *ICU Medical*, that case is inapposite because in that case, "(1) every description in the asserted patent required the 'spike' to be a pointed structure capable of piercing; (2) requiring the 'spike' to be pointed was necessary in order for it to perform the function of piercing the seal; and (3) the ordinary meaning of 'spike' to one of skill in the art was a pointed structure for piercing." *See Jang v. Boston Scientific Corp.*, 493 F. App'x 70, 77 (Fed. Cir. 2012) (citing *ICU Medical*, 558 F.3d at 1374-75). Here, however, the Detailed Description discusses two motion mechanisms without using the terms, "guide path unit" or "movable member," suggesting that a guide path unit and movable member may not be necessary to create the up-and-down and back-and-forth motion of the infant seats. *See* '609 Patent col. 5 ll.41-42, col. 6 ll.18-25, (Docket No. 1-2 at 21). The ordinary meaning of motion mechanism, moreover, may not require a guide path unit or movable member to create up-and-down and back-and-forth motion, because a motion mechanism could simply be "a combination of machine parts." *See* Revised (and corrected) Joint Disputed Claim Terms Chart, (Docket No. 46 at 2).

Although Thorley asserts that the first motion mechanism of the second preferred embodiment is "virtually identical" to that of the first preferred embodiment, (Docket No. 136 at

5), Thorley does not present any expert testimony or evidence that a person of ordinary skill in the art would consider the two motion mechanisms to be virtually identical. *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony. It does not, and cannot, support Clontech's burden on summary judgment."). Thorley's expert, Dr. Clark, opines that the written description does not support the "generalized image" of the motion mechanism set forth in the claims, but he does not opine that the motion mechanisms in the first and second preferred embodiments are virtually identical. Clark Report at 139-41, (Docket No. 75-1 at 140-42). To be sure, the Detailed Description discloses that the second and third preferred embodiments are "similar in construction" to the first preferred embodiment, *see* '609 Patent col. 5 ll.24-25, col. 6. l.17, (Docket No. 1-2 at 21), but it also discloses that "numerous modifications and variations can be made without departing from the scope and spirit of this invention," *see id.* col. 6. ll.41-43, (Docket No. 1-2 at 21). In response, Wonderland proffers the Expert Report of Mr. Drobinski, in which he concludes that "two very different approaches to causing both up-and-down and back-and-forth motion of infant seats are fully described, in detail, in the '609 patent," which "would convey to a person of skill in the art of infant rocker design that the inventors of the '609 patent were in full possession of the technology of the inventions set forth in claims 12-13 and 19-20 at the time of the original filing in 2007." Drobinski Report at 17, (Docket No. 134-5 at 19). The Court therefore finds that Thorley has not established by clear and convincing evidence that no reasonable fact finder could decide that the first and second preferred embodiments are different.

Thorley next argues that the inventors did not have possession of the claimed invention because all three preferred embodiments in the Detailed Description still include at least two

elements that are not present in the claim language, regardless of whether the aforementioned elements are a "guide path unit" and a "movable member" or a "straight guiding rod" and a "first roller." (Docket No. 136 at 8). It is not necessary, however, for the specification of the '609 Patent to disclose every single species of a broader claimed genus because "disclosure of a species may be sufficient written description support for a later claimed genus including that species." *See Synthes USA, LLC*, 734 F.3d at 1344. The "mechanical world" is a "fairly predictable field," and "predictability is a factual issue." *See id.* (holding that substantial evidence supported the jury's finding that patent was invalid for lack of written description). Mr. Drobinski further opines on behalf of Wonderland that when the applications that led to the '609 Patent were filed, "the available mechanisms for imparting and guiding motion in infant products w[ere] well-developed and highly predictable." Drobinski Report at 16, (Docket No. 134-5 at 18). To that end, Thorley has not established that "the difference between members of [a species] is such that [a] person skilled in the art would not readily discern that other [species] would perform similarly to the disclosed members." *See Bilstad*, 386 F.3d at 1125. The burden was on Thorley to demonstrate unpredictability in the field of invention by clear and convincing evidence, *see Synthes USA, LLC*, 734 F.3d at 1344; *Ariad Pharms., Inc.*, 598 F.3d at 1354, and Thorley has not presented any argument on said unpredictability. (Docket Nos. 101, 136).

    Finally, to the extent that Thorley contends that the '609 Patent is a continuation of the previously filed '728 Patent, Thorley's arguments are not persuasive because, as noted above, the specification of the '728 Patent is nearly identical to that of the '609 Patent. *Compare* '728 Patent col. 3 l.15 to col. 6 l.45, (Docket No. 103-2), *with* '609 Patent col. 3 l.15 to col. 6. l.45, (Docket No. 1-2 at 20-21). Contrary to Thorley's position, the written description requirement is based on the specification rather than the claims of the earlier filed application. *See ICU Med.,*

*Inc.*, 558 F.3d at 1379 ("We agree with Alaris that the specification distinguishes a tube from a spike, and ICU fails to identify any disclosure in the specification to support its species-genus argument."). Thorley itself even acknowledges that "the written description is determined based on the original application to which priority is claimed." (Docket No. 101 at 13). Therefore, Thorley's arguments on the priority of and the insufficiency of the specification of the '728 Patent in describing the claimed motion mechanisms are unavailing.

In sum, the Court finds that Thorley has not established by clear and convincing evidence that no reasonable fact finder could conclude that the specification of the '609 Patent sufficiently discloses the claimed motion mechanisms. *See Streck, Inc.*, 665 F.3d at 1285.

## V. CONCLUSION

For the aforementioned reasons, Thorley's Motion for Summary Judgment of Invalidity of Claims 12, 13, 19, and 20 of the '609 Patent under 35 U.S.C. § 112, (Docket No. [100]), is DENIED. An appropriate Order follows.

/s Nora Barry Fischer
Nora Barry Fischer
United States District Judge

Date: December 16th, 2013
cc/ecf: All counsel of record

13