**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WONDERLAND NURSERYGOODS CO., LTD., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 12-196 |
| vs. | ) ) | Judge Nora Barry Fischer |
| THORLEY INDUSTRIES, LLC, *d/b/a* 4MOMS, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

Plaintiff Wonderland Nursery Goods Co. ("Wonderland") brings this action against Defendant Thorley Industries, LLC d/b/a 4MOMS ("Thorley") for the alleged infringement of U.S. Patent No. 8,047,609 (the "'609 Patent") (filed Dec. 3, 2010), (Docket No. 1-2 at 2). The '609 Patent is entitled "Infant Rocking Chair and Driving Device for Driving the Same." *Id.*, (Docket No. 1-2 at 2). Presently pending before the Court are three motions for summary judgment, consisting of Thorley's Motion for Summary Judgment of Invalidity of Claims 12-14 and 19-20, (Docket No. 108), and the parties' Cross Motions for Summary Judgment of Non-Infringement, (Docket No. 104), and Infringement, (Docket No. 95), of the aforementioned claims. Upon consideration of the parties' positions, and for the following reasons, these Motions are GRANTED, in part and DENIED, in part; they are GRANTED as to non-infringement of Claims 12-14 only, in favor of Thorley, and DENIED in all other respects.

### II.    BACKGROUND

Wonderland brings this action against Thorley based on the alleged infringement of Claims 12-14 and 19-20 of the '609 Patent by the accused mamaRoo variable motion infant

rocking chair. (Docket No. 1 at 1-2). Wonderland, the assignee of the '609 Patent, is a Taiwanese company that manufactures products for infants and young children, such as baby strollers, play-yards, car safety seats, and high-chairs. *See* Hampton Rep. at 6, (Docket No. 114-1 at 10). Thorley is a Pennsylvania corporation based in Pittsburgh that manufactures and sells the mamaRoo and other infant products. (Docket No. 19 at 2-3). The Court provides a brief summary of the '609 Patent, the relevant prior art references, and the accused mamaRoo device.

### A. The '609 Patent

The '609 Patent is directed at "infant rocking chairs," with "a driving device for driving a seat body of an infant rocking chair to move back and forth as well as up and down." *See* '609 Patent col. 1 ll.15-19, (Docket No. 1-2 at 19). The patent discloses that "conventional infant rocking chairs" produce only "back-and-forth" or "up-and-down" motion, whereas a "curved swinging motion in which a back-and-forth motion is combined with an up-and-down motion" is preferable to "impart greater comfort to the infant." *Id.* col. 1 ll.21-27, (Docket No. 1-2 at 19).

The '609 Patent has three independent claims: 1, 12, and 19. Claims 1 and 19 and their dependent claims are directed at a "driving device for an infant rocking chair." *Id.* col. 6 l.48, col. 8 l.39, (Docket No. 1-2 at 21-22). Claim 12 and its dependent claims reach "an infant rocking chair." *Id.* col. 7 l.59, (Docket No. 1-2 at 22). The specification describes three preferred embodiments in a Summary of the Invention, *id.* col. 1 l.32 to col. 2 l.48, (Docket No. 1-2 at 19), and a Detailed Description, *id.* col. 3 l.15 to col. 6. l.45, (Docket No. 1-2 at 20-21).

Independent Claim 12 is reproduced below:

> An **infant rocking chair** comprising:
> a seat body;
> a **bottom seat**;
> a base disposed between said seat body and said bottom seat and movable on said bottom seat;

> a supporting element connected to said base for supporting said seat body;
>
> a **first motion mechanism disposed between** said base and said bottom seat **for driving** said base to move back and forth on said bottom seat; and
>
> a **second motion mechanism** disposed between said supporting element and said bottom seat **for driving** said supporting element to move up and down relative to said base.

*See* '609 Patent col. 7 l.59 to col. 8 l.11, (Docket No. 1-2 at 22) (emphasis added). In its Claim Construction Order, (Docket No. 59), the Court defined the term "infant rocking chair" to denote "a seat or chair-like device that is designed to hold an infant and which moves or sways back and forth." The Court also construed the claim term "bottom seat" to be "a structure at the bottom of an object upon which the object sits or rests." *Id.* As for the claim term "motion mechanism," the parties stipulated to the definition of "a combination of machine parts." *See* Revised (and corrected) Joint Disputed Claim Terms Chart, (Docket No. 46). The parties also agreed that no claim construction was necessary for the claim terms: "for driving" and "between." *See id.*

Claim 14, which is dependent on Claim 12, further includes, among other elements, a "second pair of guiding elements spaced apart from each other." *See* '609 Patent col. 8 ll.18-24, (Docket No. 1-2 at 22). During claim construction, the Court construed "guiding elements" to denote "a set of tracks which direct movement." Claim Construction Order, (Docket No. 59).

Independent Claim 19 is also reproduced below:

> A **driving device** for an **infant rocking chair**, the infant rocking chair including a seat body and a **bottom seat**, said driving device comprising:
>
> a base adapted to be disposed between the seat body and the bottom seat;
>
> a supporting element connected to said base and adapted to support the seat body;
>
> a **first motion mechanism** including a horizontal first guide path unit adapted to be **disposed at the bottom seat**, and a first movable member disposed on said base and movable along said first guide path unit; and

> a **second motion mechanism** adapted to be disposed between the seat body and the bottom seat **for driving** said supporting element to move up and down relative to said first movable member.

*See* '609 Patent col. 8 ll.39-59, (Docket No. 1-2 at 22) (emphasis added). As with the claim term "for driving," the parties did not seek claim construction of the term "driving device." *See* Revised (and corrected) Joint Disputed Claim Terms Chart, (Docket No. 46).

### B. Prior Art References

Thorley first asserts that U.S. Patent No. 5,022,708 ("Nordella") (filed Nov. 16, 1989) anticipates the '609 Patent.[1] *See* Nordella, (Docket No. 111-2). Nordella is a "Mechanical Seat Apparatus for Simulating Motion" that includes a "novel spherical bearing located below each seat for providing realistic simulation of motion in the yaw, pitch and roll directions." *Id.* at 2, (Docket No. 111-2 at 2). The supporting structure of Nordella "enables movement of each seat in the backward and forward, side to side, and upward and downward directions." *Id.* Nordella provides "[c]ommon hydraulics" to "simultaneously impart motion to a plurality of seats." *Id.*

Thorley also believes that Nordella, in combination with U.S. Patent No. 5,711,045 ("Caster") (filed Feb. 28, 1996), make the '609 Patent obvious to a person of ordinary skill in the art. *See* Caster, (Docket No. 111-7). Caster is an "apparatus for inducing relaxation or sleep in infants including a base, [and] a platform mounted on the base such that the platform is movable with at least three degrees of freedom of motion relative to the base." *Id.* at 2, (Docket No. 111-7 at 2). Caster includes "a child retainer provided on the platform, a device for moving the platform in the at least three degrees of freedom of motion and a driving source for driving the device for moving the platform in the at least three degrees of freedom of motion." *Id.*

---

[1] For a more detailed discussion and drawings of the first and second motion mechanisms allegedly disclosed by the Nordella reference, see sections IV.A.3-4, *infra*.

### C. The Accused mamaRoo Device

The accused mamaRoo[2] is an infant rocking chair "designed to hold an infant" that "moves and sways back and forth." (Docket No. 123 at 2-3). It contains a seat body, a bottom seat, and a base, with "a driving device comprising a base adapted to be disposed between the seat body and the bottom seat." *Id.* at 3, 13. The bottom seat is "at the bottom of the mamaRoo upon which other objects sit or rest." *Id.* at 3. The base is "disposed between said seat body and said bottom seat and movable on said bottom seat." *Id.* at 4. Connected to the base is a "supporting element" identified as a "double scissor mechanism," which supports the seat. *Id.*

The mamaRoo has a "first motion mechanism," including "wheels and rails," which is "disposed between the base and the bottom seat," and which is "part of what cause[s] the base to move back and forth on the bottom seat." *Id.* at 4-5. The mamaRoo further contains "gearing and linkage," which are "for driving the base to move back and forth on the bottom seat." (Docket No. 142 at 2-3). The parties do not agree, however, on whether the first motion mechanism requires the gear and linkage, (Docket No. 130 at 10-11), and on whether the gear and linkage are "disposed between the base and the bottom seat," (Docket No. 142 at 3).

The mamaRoo also has a "second motion mechanism," which is identified as a "double scissor mechanism and bearing surfaces upon which the wheels ride," and which is "disposed between the supporting element and the bottom seat." (Docket No. 123 at 6). As with the first motion mechanism, however, the parties disagree on the function of the double scissor mechanism. (Docket No. 142 at 4-5). They contest whether the double scissor mechanism is "for driving" the platform containing the seat body to move up and down and whether a "coil spring" constitutes part of the second motion mechanism. *Id.* at 4-7.

---

[2] For a more detailed discussion and photographs illustrating the mamaRoo's alleged first and second motions mechanism, see sections IV.C.3-4, *infra*.

Additionally, the parties dispute whether the mamaRoo has a "second pair of guiding elements." *Id.* at 7. Although the mamaRoo has "indication lines" that "are spaced apart from each other," (Docket No. 123 at 11), these lines "do not serve any functional purpose with respect to guiding or directing movement of the wheel," (Docket No. 142 at 8). Thus, the indication lines do not "constitute the second pair of guiding elements." *Id.* However, the parties continue to contest whether the "top surface of the base" constitutes a second pair of guiding elements that "direct[s] movement of the wheels" or "provide[s] any horizontal (side to side) restraint on the movement of the wheels." *Id.* at 8-9.

Having briefly summarized the '609 Patent, the Nordella and Caster prior art references, and the accused mamaRoo device, the Court now turns to the procedural history of this case.

D.    **Procedural History**

Wonderland filed its complaint against Thorley for infringement of the '609 Patent by the accused mamaRoo device on February 12, 2012. (Docket No. 1). On January 11, 2013, the Court issued a Memorandum Opinion and Claim Construction Order, (Docket Nos. 58-59), following the receipt of the Revised Claim Construction Chart, the transcript of the Markman Hearing, and the Pre-Hearing and Post-Hearing Briefs. (Docket Nos. 39-43, 45-47, 51, 53-54). On March 13, 2013, the parties entered into a stipulation of non-infringement of Claims 1-3 of the '609 Patent, (Docket No. 66), based on the Court's Claim Construction, for which the Court granted entry of Partial and Non-Final Judgment of Non-Infringement, (Docket No. 67).

Meanwhile, on March 14, 2013, Wonderland filed an early Motion for Summary Judgment of Infringement of Claims 12-14 and 19-20, (Docket Nos. 68-72, 76-79, 81-83), which the Court denied without prejudice to be re-filed on July 1, 2013, (Docket No. 84). On April 12,

2013, Wonderland also filed a Motion to Strike Portions of the Expert Report of William W. Clark, (Docket Nos. 73-75, 80, 88, 91), which the Court denied, (Docket No. 93).

On July 1, 2013, the parties filed four (4) Cross-Motions for Summary Judgment on the issues of invalidity based on anticipation and obviousness, invalidity under 35 U.S.C. § 112, infringement, and non-infringement, as well as a Motion to Strike the Expert Report of Scott D. Hampton. (Docket Nos. 95, 100, 104, 108, 112). The Court denied Thorley's Motion to Strike the Expert Report of Mr. Hampton on December 5, 2013, (Docket Nos. 150-51), and denied Thorley's Motion for Summary Judgment of Invalidity under § 112 on December 16, 2013, (Docket Nos. 155-56). The Court now turns to the parties' remaining three motions.

Thorley filed its Motion for Summary Judgment of Invalidity on July 1, 2013, (Docket Nos. 108-11), to which Wonderland filed an Opposition, (Docket Nos. 126-28), and Thorley filed a Reply, (Docket Nos. 138-39). The parties also filed their Cross-Motions for Summary Judgment of Non-Infringement, (Docket Nos. 104-07), and Infringement, (Docket Nos. 95-98), on July 1, 2013. They filed their Opposition papers on July 29, 2013, (Docket Nos. 122-25, 129-31), and their Reply papers on August 14, 2013, (Docket Nos. 135, 140-42), and on August 26, 2013, the Court heard oral argument on said Motions,[3] (Docket Nos. 143-45).

## III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Under Rule 56, a district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

---

[3] The Court secured the preparation of and considered the transcript, (Docket No. 145), as well as a videotape of the arguments.

*Catrett*, 477 U.S. 317, 322 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must "view the evidence in a light most favorable to the party opposing the motion with doubts resolved in favor of the opponent." *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). In addition, an issued patent "is presumed valid, 35 U.S.C. § 282, and this presumption can be overcome only by clear and convincing evidence to the contrary." *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1320 (Fed. Cir. 2011).

When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. *Celotex*, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. *Id.* at 325. "Instead, ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* After the moving party has satisfied this low burden, the adverse party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. *Id.* at 324.

## IV. DISCUSSION

The Court addresses anticipation in view of Nordella, obviousness in light of the combination of Nordella and Caster, and infringement by the accused mamaRoo device, in turn.

### A. Anticipation

Thorley moves for summary judgment of invalidity of the '609 Patent based on anticipation by way of the Nordella reference. (Docket No. 109 at 5). Under 35 U.S.C. § 102, "[a] person shall be entitled to a patent unless—(1) the claimed invention was patented … before

the effective filing date of the claimed invention." 35 U.S.C. § 102(a). "Anticipation requires clear and convincing proof that a single prior art reference 'not only disclose[s] all of the elements of the claim within the four corners of the document, but ... also disclose[s] those elements arranged as in the claim.'" *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1351 (Fed. Cir. 2013) (quoting *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008)).

"In order to anticipate a claimed invention, a prior art reference must enable one of ordinary skill in the art to make the invention without undue experimentation." *Impax Labs., Inc. v. Aventis Pharm., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008). "[W]hen an accused infringer asserts that a prior art patent anticipates specific patent claims, the infringer enjoys a presumption that the anticipating disclosure also enables the claimed invention." *Id.* at 1316. "However, the patentee may overcome that presumption with persuasive evidence showing that the prior art patent does not enable the claimed invention." *Id.* "Whether a prior art reference is enabling presents a question of law based upon underlying factual findings. *Id.* at 1315.

In the instant case, Thorley argues that Nordella "discloses an apparatus for imparting motion in the backward and forward, side to side, and upward and downward directions to a seat." (Docket No. 109 at 23). Thorley asserts that Nordella anticipates Claim 12 of the '609 Patent because it contains each of the following seven limitations, (*see* Figures 1 and 2, *infra*):

> (1) An infant rocking chair;
> (2) A seat body;
> (3) A bottom seat;
> (4) A base disposed between said seat body and said bottom seat and movable on said bottom seat;
> (5) A supporting element connected to said base for supporting said seat;
> (6) A first motion mechanism disposed between said base and said bottom seat for driving said base to move back and forth on said bottom seat; and

(7) A second motion mechanism disposed between said supporting element and said bottom seat for driving said supporting element to move up and down relative to said base.

(Docket No. 109 at 8-14). Thorley presents similar arguments for dependent Claims 13 and 14, independent Claim 19, and dependent Claim 20. (Docket No. 109). As for Claim 14, Thorley further asserts that Nordella meets the limitation of "guiding elements." *Id.* at 15.



Figure 1: Nordella prior art reference. *See* Nordella fig. 1, (Docket No. 111-2 at 3).



**5. Supporting Element (Support Member)**

**6. First Motion Mechanism (Guide Wheels and Channels**

Figure 2: Nordella prior art reference. *See* Nordella fig. 2, (Docket No. 111-2 at 4).

Wonderland opposes anticipation based on Nordella with respect to the following five limitations: (1) the infant rocking chair; (2) the bottom seat; (3) the first motion mechanism disposed between; (4) the second motion mechanism; and (5) the second pair of guiding elements. (Docket No. 126 at 2). The Court now turns to the aforementioned five limitations.

### 1.     Infant Rocking Chair

Thorley first argues that Nordella teaches an infant rocking chair. (Docket No. 109 at 8). Thorley relies on its expert, William W. Clark,[4] who finds that Nordella discloses a "moving chair, designed to hold a person, including an infant, such as a larger-sized infant." Clark Rep. at 35, (Docket No. 138-1 at 6). Thorley also relies on the United States Patent and Trademark Office's ("USPTO") finding that Nordella "is capable of permitting a smaller person, including an infant, to be seated therein." USPTO Right of Appeal Notice at 44, (Docket No. 111-4 at 20). Wonderland, however, relies on the Court's construction of "infant rocking chair" as a device "designed to hold" an infant. *See* Memorandum Opinion at 13, (Docket No. 58 at 13). Wonderland maintains that Nordella cannot be designed to hold an infant simply because (1) Nordella is designed to hold a person, and (2) an infant is a person. (Docket No. 126 at 8).

In this Court's estimation, Thorley has not established by clear and convincing evidence that Nordella contains an infant rocking chair. During claim construction, the Court construed "infant rocking chair" to denote "a seat or chair-like device that is designed to hold an infant and which moves or sways back and forth." Claim Construction Order, (Docket No. 59). Thorley proposed an alternate construction of "capable of holding an infant," but the Court found that "almost any seat or chair is capable of holding an infant dependent on the size of seat or chair and the size of the infant." Memorandum Opinion at 12, (Docket No. 58 at 10-12). The Court also noted that a different standard governs reexamination proceedings, (Docket No. 58 at 11 n.6), as compared with the courts. *See In re Swanson*, 540 F.3d 1368, 1377-78 (Fed. Cir. 2008)

---

[4] Dr. Clark is a Professor of Mechanical Engineering and Materials Science in the Swanson School of Engineering at the University of Pittsburgh, having joined the faculty as an Assistant Professor in 1992. Clark Rep. at 3, (Docket No. 138-1 at 4). He received his B.S., M.S., and Ph. D degrees in Mechanical Engineering from Virginia Polytechnic Institute and State University. *Id.* He has been retained by Thorley to examine the validity of Claims 12, 13, 14, 19, and 20 of the '609 Patent. *Id.* He has also been retained by Thorley to examine infringement of the aforementioned claims by the accused mamaRoo device. Clark Rebuttal Rep. at 2, (Docket No. 107-4 at 3).

(internal quotation marks omitted) ("And unlike in district courts, in reexamination proceedings claims are given their broadest reasonable interpretation, consistent with the specification ….").

Therefore, the "infant rocking chair" element is a necessary limitation for all of the claims at issue, and Thorley has failed to present clear and convincing evidence of anticipation. To that end, the Court denies Thorley's Motion for Summary Judgment of Invalidity in view of Nordella because Nordella may not contain the necessary "infant rocking chair" limitation.

### 2.    Bottom Seat

For completeness, however, the Court also considers the other four limitations at issue. Thorley asserts that the term "bottom seat" is met by Nordella's rectangular frame (identified as #64). (Docket No. 109 at 10). Thorley relies on the USPTO's finding that the rectangular frame corresponds to a bottom seat. *See* USPTO Right of Appeal Notice at 31-32, (Docket No. 111-4 at 7-8). Thorley maintains that the "bottom seat" does not need to be at the *absolute bottom* of an apparatus, as long as the bottom seat is at the bottom of "some object, upon which the object sits, regardless if that object is the entire apparatus or only a portion of it." (Docket No. 109 at 10). Wonderland, by contrast, believes that the key feature of the "bottom seat" is its location in reference to the apparatus, i.e., the bottom seat must be at the *bottom*. (Docket No. 126 at 8). Thus, Wonderland contends that the frame (64) cannot be the *bottom seat* because there is additional structure below the frame (64), e.g., wheels (68), brackets (70), and tracks (72). *Id.*

In its Claim Construction Order, the Court did not specify that the bottom seat must be at the absolute bottom of the device, only that it must be at the bottom of some object. (Docket No. 59). Nevertheless, Thorley has not demonstrated by clear and convincing evidence that summary judgment should be entered against Wonderland because a reasonable jury could conclude that the tracks (72) are the bottom seat because they are below the frame (64).

### 3. First Motion Mechanism Disposed Between the Base and Bottom Seat



Figure 3: Nordella prior art reference. *See* Nordella fig. 1, (Docket No. 111-2 at 3).

Turning now to the "first motion mechanism disposed between the base and bottom seat," Thorley contends that Nordella "shows guide wheels (83) and channels (86) disposed on the upper surface of horizontal frame (64), i.e., the 'bottom seat.'" (Docket No. 109 at 11). For clarity, the Court reproduces the first figure from Nordella with labels for these elements. *See* Figure 3, *supra*. Thorley asserts that the "guide wheels (83) are mounted to the frame (76) and positioned below the support (78), i.e., the 'base,' and roll forward and backward within the

channels (86) positioned on top of the frame (64) when the associated cylinder is activated." (Docket No. 109 at 11). Thorley also relies on the USPTO's finding that Nordella anticipates the first motion mechanism. *See* USPTO Right of Appeal Notice at 32, (Docket No. 111-4 at 8).

Wonderland, however, argues that Thorley does not account for the springs (61) and the hydraulic cylinder (162), which help drive the base back and forth, but which are not "disposed between" the base (78) and the bottom seat (64). Wonderland charges Thorley with using different constructions for invalidity and infringement: if Thorley contends that the gear and linkage of the mamaRoo must be part of the "first motion mechanism disposed between the base and bottom seat," *see* § IV.C.2, *infra*, Thorley must also include the springs (61) and hydraulic cylinder (162) of Nordella as part of the first motion mechanism. (Docket No. 126 at 9-10).

As a threshold matter, to the extent that Thorley asserts that the so-called springs (61) are not springs, but plastic covers to prevent a user from interacting with the mechanics of the chair, (Docket No. 138 at 7), Thorley is incorrect because Nordella labels the safety cover as #60, whereas the so-called springs are labeled "accordion type folds (61)," which "accommodate for movement of the mechanical seat apparatus (50)." *See* Nordella col. 3 ll.25-31, (Docket No. 111-2 at 8). A reasonable jury could conclude that the so-called springs (61) are springs because they *accommodate for movement of the mechanical seat apparatus*. The so-called springs (61) could thus constitute a necessary part of the first motion mechanism. Even without considering the so-called springs (61), Thorley also fails to address in its Reply, (Docket No. 138), the argument that the hydraulic cylinder (162) must be part of the first motion mechanism.

The Court further notes that "[i]t is axiomatic that claims are construed the same way for both invalidity and infringement." *E.g.*, *Source Search Technologies, LLC v. LendingTree, LLC*, 588 F.3d 1063, 1075 (Fed. Cir. 2009). As explained in section IV.C.1.b, *infra*, the inventors of

the '609 Patent used the term "between" within the claim language to specify the precise location of the first motion mechanism. Although Wonderland relies on the MERRIAM WEBSTER dictionary for the definition of the claim term "between," extrinsic sources are not as persuasive as intrinsic evidence contained within the claim terms. Under *Phillips v. AWH Corp.*,

> [J]udges are free to consult dictionaries and technical treatises at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.

415 F.3d 1303, 1322-23 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). One reason for precision in specifying the location of the first motion mechanism could be to distinguish prior art references, such as Nordella. To that end, a reasonable jury could find that the first motion mechanism must include either or both the so-called springs (61) and the hydraulic cylinder (162), and that these elements are not disposed between the base and the bottom seat. Therefore, Thorley has not established by clear and convincing evidence that Nordella contains the first motion mechanism disposed between the base and the bottom seat.

### 4. Vertical Motion in the Context of the Second Motion Mechanism

As for the second motion mechanism, Thorley argues that Nordella enables vertical motion because it describes channels (94) that "permit up and down motion of the seat stage assembly 56 via guide wheels 90 positioned therein." (Docket No. 138 at 7). Thorley believes that even if the channels (94) are not labeled in the drawings of the Nordella reference, the written description of Nordella sufficiently explains how the vertical motion mechanism operates because Nordella is simple mechanical technology, prior art is presumed to be enabled, and no authority requires the elements of prior art references to be disclosed in drawings. (Docket Nos.

109 at 13-14; 138 at 7-8). Thorley also relies on the USPTO's finding that Nordella discloses a second motion mechanism. *See* USPTO Right of Appeal Notice at 32, (Docket No. 111-4 at 8).



Figure 4: Nordella prior art reference. *See* Nordella fig. 1, (Docket No. 111-2 at 3).

Wonderland nevertheless asserts that Nordella does not enable vertical motion because its drawings do not show channels (94) to guide the upward motion of the seat stage assembly (56), and the frame members (82) are fixed in length and do not move up and down. (Docket No. 126 at 13). Wonderland cites inconsistencies between the first figure of Nordella, *see* Figure 4, *supra*, which shows the guide wheels (90), and the second one, *see* Figure 2, *supra*, which does

not.  *Id.*  Wonderland also argues that Thorley's expert, Dr. Clark, conceded that these drawings do not show vertical guiding channels (94).  Clark Dep. 33:24-34:9, (Docket No. 128-1 at 10).

The Court finds that despite Thorley's arguments to the contrary that the guide wheels (90) permit up and down motion of the seat stage assembly (56), with the wheels (90) moving along the (unlabeled) channels (94), Thorley has not demonstrated how Nordella achieves this vertical motion mechanism.  *See* Figure 4, *supra*.  According to Nordella, the "seat stage assembly 56 preferably includes eight guide wheels 90, each of which may be mounted at a corner of the frame 88 by pins and/or brackets (not shown, but similar to brackets 70) to enable the seat stage assembly 56 to roll upward and downward within the intermediate stage assembly along channels located on the frame members 82."  Nordella col. 4 ll.4-11, (Docket No. 111-2 at 8).  Nordella also states: "As the hydraulic cylinder 166 is activated or deactivated, the seat stage assembly 56 moves upward or downward as the guide wheels 90 of the seat stage assembly roll along the channels 94 of the intermediate stage assembly 54."  *Id.* col. 6 ll.22-26, (Docket No. 111-2 at 9).  However, not only does Nordella not show the "brackets (70)" in the drawings, but it also fails to explain how the wheels (90) move or roll (vertically) within (unlabeled) channels (94) that are narrower than the diameter of the wheels (90) themselves.  *See* Figure 4, *supra*.

Thus, Wonderland has presented persuasive evidence showing that, after viewing the facts in the light most favorable to Wonderland, Nordella may not enable vertical motion.  *See Impax Labs., Inc.*, 545 F.3d at 1315-16.  At minimum, the factual question of what Nordella discloses as a prior art reference is one properly reserved for the jury.  *See ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1324 (Fed. Cir. 2012) (citing *Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331, 1345-46 (Fed. Cir. 2001)) ("What a prior art reference discloses is a factual question. We think the resolution of this factual dispute was up to the jury.").

### 5.      Second Pair of Guiding Elements

With regard to Claim 14 only, Thorley further asserts that Nordella discloses a "second pair of guiding elements" because the specification of Nordella describes channels (94), which are spaced apart from each other.  (Docket No. 109 at 15).  Thorley argues that the wheels (90) of the seat stage assembly (56) roll "along channels located on the frame members (82)," and these channels are "tracks which direct movement."  *Id.* at 15-16.  Thorley contends that the absence of labels is insufficient to overcome the presumption that Nordella is enabled.  *Id.* at 16.

In this Court's estimation, Nordella cannot meet the "second pair of guiding elements" limitation unless Nordella also meets the requirements for the second motion mechanism discussed above, *see* § IV.A.4, *supra*, because the second pair of guiding elements assumes that vertical motion exists before the guiding elements can guide that vertical motion.  Thorley, moreover, fails to address the second pair of guiding elements in its Reply.  (Docket No. 138).

Accordingly, as with the second motion mechanism, the Court denies Thorley's Motion for Summary Judgment of Invalidity based on the second pair of guiding elements because Thorley has not established by clear and convincing evidence that Nordella discloses the guiding elements.  At minimum, this issue is a factual question of what Nordella discloses as a prior art reference, which should go to the jury.  *See ArcelorMittal France*, 700 F.3d at 1324.

In sum, Thorley's Motion for Summary Judgment of Invalidity based on anticipation by way of the Nordella reference is denied because Thorley has not established clear and convincing evidence that Nordella discloses an infant rocking chair.  Thorley has also not demonstrated that after viewing the facts in the light most favorable to Wonderland, no reasonable jury could find that Nordella fails to disclose (1) a bottom seat, (2) a first motion mechanism disposed between the base and the bottom seat, (3) a second motion mechanism, or (4) a second pair of guiding

elements. To the extent that Thorley raises additional arguments relating to other limitations, those issues are not dispositive given that Thorley has not established by clear and convincing evidence that Nordella meets all of the aforementioned limitations.

### B. Obviousness

Even in the event that Nordella does not meet the limitations discussed above, *see* § IV.A, *supra*, the Court must still consider whether the '609 Patent is obvious in light of Nordella in combination with the Caster reference. Under § 103, "[a] patent for a claimed invention may not be obtained … if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious … to a person having ordinary skill in the art." 35 U.S.C. § 103. "Whether a claim is invalid for obviousness is determined from the perspective of one of ordinary skill in the art." *Cheese Sys., Inc.*, 725 F.3d at 1352. "Even when all claim limitations are found in prior art references, the fact-finder must determine what the prior art teaches, whether prior art teaches away from the claimed invention, and whether there was motivation to combine teachings from separate references." *Id.* "Obviousness is a question of law based on underlying findings of fact." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010). "The underlying factual inquiries include: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others." *Id.*

Here, the level of ordinary skill in the art and relevant secondary considerations are not at issue. The primary factual issues in dispute are (1) whether the Nordella prior art reference constitutes analogous art with respect to the '609 Patent, and (2) whether there was sufficient motivation to combine the prior art references. The Court addresses each issue, in turn.

## 1.    Whether the Nordella Reference Constitutes Analogous Art

"To qualify as prior art for an obviousness analysis, a reference must qualify as 'analogous art,' i.e., it must satisfy one of the following conditions: (1) the reference must be from the same field of endeavor; or (2) the reference must be reasonably pertinent to the particular problem with which the inventor is involved."  *K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1375 (Fed. Cir. 2012); *see also Wyers*, 616 F.3d at 1237.  "Whether a reference in the prior art is 'analogous' is a fact question."  *Wyers*, 616 F.3d at 1237; *see also ArcelorMittal France*, 700 F.3d at 1324 (internal citations omitted) ("Whether a particular technology is analogous art is a question of fact.  As with the evidence about whether a skilled artisan would read Bano to disclose pre-coating, we think this factual dispute was for the jury to resolve.").  "A reference is reasonably pertinent if it, as a result of its subject matter, 'logically would have commended itself to an inventor's attention in considering his problem.'"  *K-TEC, Inc.*, 696 F.3d at 1375 (quoting *Innovention Toys, LLC*, 637 F.3d at 1321).

In the instant case, Thorley believes that Nordella and Caster both "relate to moving seats," and it would be obvious to combine Nordella and Caster in creating an infant rocking chair that "impart[s] motion in the backward and forward, side to side, and upward and downward directions to a seat."  (Docket No. 109 at 23).  Thorley relies on *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007), for the principle that it would be "common sense" to combine Nordella and Caster to arrive at the claimed invention in the '609 Patent.  (Docket No. 109 at 22).  To establish that Caster is within the field of moving seats, Thorley argues that Caster discloses a device for "inducing relaxation or sleep in infants" that includes:

> (1) a base;
> (2) a platform mounted on the base;
> (3) such that the platform is movable with at least three degrees of
>     freedom of motion relative to the base;

(4) a child retainer provided on the platform;

(5) a device for moving the platform in the at least three degrees of freedom of motion; and

(6) a driving source for driving the device for moving the platform in the at least three degrees of freedom of motion.

*Id.* at 23. Thorley relies on the USPTO's finding that the "Caster and Nordella patents are in the same field of endeavor (i.e., rocking seats)." USPTO Right of Appeal Notice at 81, 84, (Docket No. 111-6 at 3, 6). Thorley further argues that market forces can prompt a person of ordinary skill to look beyond "conventional infant rocking chairs" because the '609 Patent discloses that it was solving the problem that conventional infant rocking chairs produce only back-and-forth motion or up-and-down motion. (Docket No. 109 at 24). Thorley believes that a person of ordinary skill would have "looked to a broader field of movable chairs." *Id.* To the extent that components require adjusting, Thorley maintains that those adjustments would be common sense and a necessary task in designing an infant rocking chair. *Id.* at 23-24.

Wonderland, by contrast, argues that the field of invention of "moving seats" is overbroad and includes "trains, planes and automobiles." (Docket No. 126 at 17). Wonderland asserts that the field of invention should be simulating "motion usually made by a person taking care of and holding an infant, and to do so as quietly as possible." *Id.* at 18. Wonderland contends that the field of invention of simulated motion for viewing videos is completely different from that for infant rocking chairs, which precludes Nordella from the first prong of analogous art: being in the same field of endeavor. *Id.* Wonderland also believes that Nordella is not reasonably pertinent to the problem that the '609 Patent addressed, "both with respect to the target user and the objective or purpose." *Id.* at 18-19. Wonderland maintains that Nordella targets adults and entertains or teaches, whereas the '609 Patent targets infants and induces sleep. *Id.* at 19.

The Court finds that there is at minimum a factual issue, *see ArcelorMittal France*, 700 F.3d at 1324, concerning whether Nordella is analogous prior art because Nordella and the '609 Patent may not be in the same field of endeavor, and they may not attempt to solve similar problems. In this Court's estimation, Nordella focuses on adults rather than infants and simulates motion for teaching or entertainment rather than for inducing sleep. Caster's Field of Invention, for instance, is more similar to that of the '609 Patent than is Nordella's. Caster discloses that it "relates to apparatuses similar to infant rockers and more particularly to apparatuses which impart motion to an infant to assist the infant in relaxing or going to sleep." Caster col. 1 ll.8-12, (Docket No. 111-7 at 8). Similarly, the '609 Patent discloses that it "relates to an infant rocking chair, and more particularly, to a driving device for driving a seat body of an infant rocking chair to move back and forth as well as up and down." '609 Patent col. 1 ll.15-19, (Docket No. 1-2 at 19). Nordella, by contrast, discloses that it "relates to a mechanical seat apparatus, and more particularly, to a mechanical seat apparatus designed to simulate motion for a person viewing a video or other program." Nordella col. 1 ll. 6-10, (Docket No. 111-2 at 7).

To the extent that Thorley argues that prior art need not be analogous art, Thorley is incorrect because under post-*KSR* Federal Circuit law, "[a] reference qualifies as prior art for a determination under § 103 when it is analogous to the claimed invention." *Innovention Toys, LLC*, 637 F.3d at 1321; *see also K-TEC, Inc.*, 696 F.3d at 1375 ("To qualify as prior art for an obviousness analysis, a reference must qualify as 'analogous art.'"); *In re Klein*, 647 F.3d 1343, 1348 (Fed. Cir. 2011) ("A reference qualifies as prior art for an obviousness determination under § 103 only when it is analogous to the claimed invention.").

To that end, Thorley must establish that Nordella is analogous prior art, but it relies only on *KSR* for the principle that market forces can prompt variations of prior art references in the

same or different field. *See KSR*, 550 U.S. at 417. Thorley does not account for post-*KSR* Federal Circuit precedent setting forth the still-valid requirements for analogous art. *See, e.g.*, *Wyers*, 616 F.3d at 1237; *Innovention Toys, LLC*, 637 F.3d at 1321; *K-Tec, Inc.*, 696 F.3d at 1375. Thus, Thorley has not shown by clear and convincing evidence that no reasonable jury could find that Nordella is not analogous prior art. *See ArcelorMittal France*, 700 F.3d at 1324.

### 2. Whether There Was a Motivation to Combine

Notwithstanding the above analysis, the Court also considers whether there was a motivation to combine Caster and Nordella. Thorley relies on the USPTO's finding that a person of ordinary skill in the art "would have found it obvious to replace the drive mechanism disclosed in the infant rocking seat of the Caster patent with the drive mechanism disclosed in the Nordella patent because the drive mechanism disclosed in the Nordella patent is configured to simulate motion that 'realistically provides numerous different degrees of movement' to the user." USPTO Right of Appeal Notice at 82, (Docket No. 111-6 at 4). Thorley also relies on its expert, Dr. Clark, who opines that incorporating all of Nordella's hydraulics into Caster is not necessary to render the '609 Patent obvious. Clark Dep. 69:1-12, (Docket No. 128-1 at 19).

Wonderland, however, finds no reason to consult Nordella, since Caster already provides "three degrees of freedom." (Docket No. 126 at 20). Wonderland asserts that Nordella is "not for infants," is "for entertainment (flight simulation), rather than inducing sleep," and is "heavy, expensive and … completely impractical to combine with Caster, a device with small electric motors." *Id.* Wonderland also relies on Thorley's expert, Dr. Clark, who stated: "I would see the Nordella patent as a very viable candidate to create that motion. I would not necessarily bring with that the hydraulic part." Clark Dep. 68:6-69:12, (Docket No. 128-1 at 18-19).

In this Court's estimation, Thorley has not established invalidity by clear and convincing evidence. Caster itself discloses that "imparting movement to a child will relax the child and possibly induce sleep," and that prior devices "move the infant in a repetitive simple motion involving a limited number of degrees of freedom, typically two degrees of freedom or less." Caster col. 1 ll.14-15, 27-30, (Docket No. 111-7 at 8). Caster claims to recognize and solve the problem of inducing sleep in infants by way of an "apparatus for inducing sleep in an infant which creates a complex motion with three or more degrees of freedom." *Id.* col. 1 ll.42-45, (Docket No. 111-7 at 8). Thorley presents no argument as to why Caster would be ineffective at inducing sleep in infants or any problem in Caster requiring improvement by way of Nordella.

To the extent that Thorley relies on the USPTO's Right of Appeal Notice indicating that Nordella "realistically provides numerous different degrees of movement," USPTO Right of Appeal Notice at 82, (Docket No. 111-6 at 4), neither Thorley nor the USPTO explains why a person of ordinary skill in the art would attempt to use Nordella to improve Caster, which already provides "complex motion with three or more degrees of freedom." Caster col. 1 ll.42-45, (Docket No. 111-7 at 8). The lack of explanation suggests that both Thorley and the USPTO are improperly using the '609 Patent as a roadmap to reconstruct the claimed invention based on hindsight. *See Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1368 (Fed. Cir. 2012) (quoting *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1374 n.3 (Fed. Cir. 2008)) ("While the Supreme Court made clear that a mechanical application of the teaching-suggestion-motivation test, requiring an explicit teaching in the prior art, is inappropriate, '[w]e must still be careful not to allow hindsight reconstruction of references to reach the claimed invention without any explanation as to how or why the references would be combined to produce the claimed invention.'"). Even under *KSR*, "a patent composed of several elements is not proved obvious

merely by demonstrating that each of its elements was, independently, known in the prior art." *Kinetic Concepts, Inc.*, 688 F.3d at 1369 (quoting *KSR Int'l Co.*, 550 U.S. at 418)).

Here, Thorley does not explain how or why a person of ordinary skill would attempt to improve Caster by looking to Nordella. Thorley has only established that each element of the '609 Patent was "independently, known in the prior art." *See KSR Int'l Co.*, 550 U.S. at 418. That is insufficient to establish that the '609 Patent was obvious under a theory of motivation to combine. *See Cheese Sys., Inc.*, 725 F.3d at 1352 ("Obviousness cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention." (internal quotation marks omitted)). Therefore, Thorley's Motion for Summary Judgment of Invalidity based on a theory of motivation to combine is unavailing.

In sum, Thorley has not established by clear and convincing evidence that no reasonable jury could find that Nordella constitutes non-analogous art, i.e., that Nordella is analogous art as a matter of law. Nor has Thorley established by clear and convincing evidence that a person of ordinary skill in the art would be motivated to combine the "hydraulics" of Nordella with the "infant rocking chair" of Caster to create the claimed invention of the '609 Patent. To that end, Thorley's Motion for Summary Judgment of Invalidity based on obviousness is denied.

## C.    Infringement

Having addressed Thorley's arguments on invalidity, the Court now turns to the parties' Cross-Motions for Summary Judgment on the issue of infringement. Thorley moves for summary judgment of non-infringement of claims 12-14 and 19-20 of the '609 Patent by the accused mamaRoo device, (Docket No. 104), whereas Wonderland moves for summary judgment of infringement of each of the aforementioned claims, (Docket No. 95).

Direct infringement of a U.S. patent occurs whenever a party, "without authority makes, uses, offers to sell, or sells any patented invention, within the United States." 35 U.S.C. § 271(a). For each infringement analysis, there are two steps: "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Solvay S.A. v. Honeywell Int'l, Inc.*, 622 F.3d 1367, 1379 (Fed. Cir. 2010) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996)).

"Direct infringement requires proof by preponderant evidence that the defendant performs (if a method claim) or uses (if a product claim) each element of a claim, either literally or under the doctrine of equivalents." *Cheese Sys., Inc.*, 725 F.3d at 1348. "Whether an accused device meets all the limitations of those claims is a factual question." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1357 (Fed. Cir. 2006). "To prove infringement, the patentee must show that an accused product embodies all limitations of the claim." *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Id.*

In the instant case, Thorley raises three arguments in its Motion for Summary Judgment of Non-Infringement and in opposition to summary judgment of infringement:

1. The mamaRoo does not have a first motion mechanism for driving the base back and forth that is disposed between the base and bottom seat as required by Claims 12-14;
2. The alleged second motion mechanism in the mamaRoo is not for driving the supporting element up and down as required by Claims 12-14 and 19-20; and
3. The mamaRoo does not have a second set of guiding elements as required by Claim 14.

(Docket Nos. 105 at 4; 122 at 8-23). The Court first addresses supplemental claim construction, followed by the first and second motion mechanisms, and then the guiding elements.

### 1.    Supplemental Claim Construction

As a threshold issue, Wonderland asserts that the Court must issue a supplemental claim construction for two claim terms: "for driving" and "between."[5]  (Docket Nos. 129 at 5; 140 at 4).  During claim construction, the parties had agreed that no construction of the claim terms, "for driving said base to move back and forth on said bottom seat," was necessary.  *See* Revised (and corrected) Joint Disputed Claim Terms Chart, (Docket No. 46).  The parties also stipulated that the claim term "motion mechanism" denotes "a combination of machine parts."  *Id.*

Nevertheless, Wonderland now asserts a new issue of claim construction concerning whether the "for driving" limitation must include *all* or *only some* of the components of the first and second motion mechanisms.  (Docket No. 140 at 4).  Thorley opposes a supplemental claim construction because the parties previously agreed that the plain and ordinary meaning of "for driving" should control, and the jury should determine whether the construed claim reads on the accused product.  (Docket Nos. 105 at 12; 122 at 9; 135 at 4-5, 10).

The Court first notes that it may engage in a rolling claim construction.  *See Pressure Products Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1316 (Fed. Cir. 2010) ("As this court has recognized, district courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." (internal quotation marks omitted)).  Even after a trial has begun, "a trial judge may learn more about the technology during the trial that necessitates some clarification of claim terms before the jury deliberates."  *Id.* at 1315.  "When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  Thus,

---

[5] As noted earlier in Section II.A, *supra*, Claim 12 of the '609 Patent requires, for example, "a first motion mechanism **disposed between** said base and said bottom seat **for driving** said base to move back and forth on said bottom seat."  *See* '609 Patent col. 8 ll.5-8, (Docket No. 1-2 at 22) (emphasis added).

the Court must resolve the scope of the claims if a supplemental construction is necessary, but such constructions need not delay trial. *Pressure Products Med. Supplies, Inc.*, 599 F.3d at 1315.

With regard to claim construction, "[i]t is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1312 (internal quotation marks omitted). In *Phillips v. AWH Corp.*, the Federal Circuit provided a blueprint for claim construction:

> A court construing a patent claim seeks to [afford] a claim the [ordinary and customary] meaning it would have to a person of ordinary skill in the art at the time of the invention....
>
> In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction ... involves little more than the application of the widely accepted meaning of commonly understood words ....
>
> In many cases ..., however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art. Because the meaning ... as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean .... Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art ....
>
> Within the class of extrinsic evidence, the court has observed that dictionaries and treatises can be useful in claim construction .... We have especially noted the help ... technical dictionaries may provide to a court to better understand the underlying technology and the way in which one of skill in the art might use the claim terms .... Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art .... Such evidence, we have

> held, may be considered if the court deems it helpful in determining the true meaning of [the] language used ….
>
> [Although] ... extrinsic evidence in [a] general [sense is] less reliable than [intrinsic evidence] in determining how to read claim terms, .... encyclopedias and treatises [can be] particularly useful resources to assist the court in determining the ordinary and customary meanings of claim terms [so long as they are considered within the context of the intrinsic evidence].

*Phillips,* 415 F.3d at 1303, 1313, 1314, 1318-19 (citations and internal quotation marks omitted).

In looking to the intrinsic evidence, the court considers the language of the claim, the specification, and the prosecution history. *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The claim itself is of primary importance since "it is that language that the patentee chose to use to 'particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention.'" *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting 35 U.S.C. § 112, ¶ 2). However, the Federal Circuit advised in *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005), that "[w]e cannot look at the ordinary meaning of the term ... in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."

Next, the Court must look to the specification in the patent. As to the specification, the Federal Circuit has stated that it "is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of the disputed claim." *Vitronics*, 90 F.3d at 1582; *Phillips*, 415 F.3d at 1315; *Zircon Corp. v. Stanley Black & Decker, Inc.*, 452 F. App'x 966, 972 (Fed. Cir. 2011). "[I]t is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Phillips*, 415 F.3d at 1317. However, there is a danger in reading limitations from the specification into the claim. *Id.* at 1323. While the specification may be the

best guide in interpreting a disputed term, the court must be careful to use the specification only to ascertain its meaning and not to impose a limit on a claim term. *Id.*

The final piece of intrinsic evidence which the Court may consider is the prosecution or file history, if it is in evidence. *Zircon,* 452 F. App'x at 972. The prosecution history "consists of all express representations made by or on behalf of the applicant to the [patent] examiner to induce a patent grant." *Howmedica Osteonics Corp. v. Wright Medical Tech., Inc.*, 540 F.3d 1337, 1346 (Fed. Cir. 2008) (internal quotation marks omitted). The prosecution history can provide insight into the scope of the invention, as understood by the inventor and the USPTO. *Phillips*, 415 F.3d at 1317. A caveat to the use of the prosecution history is that it "often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id*.

If the meaning of a claim's terms cannot be ascertained through intrinsic evidence, a court may consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* Although extrinsic evidence "can shed useful light on the relevant art," such evidence is less significant than intrinsic evidence. *Id.* "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term," and "[i]n such circumstances, it is improper to rely on extrinsic evidence." *Vitronics*, 90 F.3d at 1583. Extrinsic evidence "may be used only to help the court come to the proper understanding of the claims; it may not be used to vary or contradict the claim language" or the other intrinsic evidence. *Id*. at 1584.

### a.     For Driving

Turning to the constructions at issue, the Court first addresses the construction of the claim term "for driving," for which Wonderland proposes two alternative definitions:

> (1)     "contributes to or facilitates driving" (Wonderland); or

> (2) "each and every component that contributes to driving"
> (Thorley's position, according to Wonderland).

(Docket No. 140 at 4).  As a threshold issue, Thorley asserts that the definition of the term "driving" is not contested because Wonderland still uses "driving" in its proposed construction. (Docket No. 135 at 4-5).  Thorley believes that Wonderland's construction of "for driving" would read the "for driving" limitation out of the claim entirely.  *Id.* at 10.  Thorley also maintains that the construction of "for driving" must include a power mechanism, since "for driving" is associated with the "power mechanism" in the specification.  (Docket No. 122 at 12).

Wonderland, however, contends that the term "for driving" should not require all of the components that contribute to a motion mechanism.  (Docket No. 140 at 4-7).  Wonderland argues that a power mechanism was "deliberately left out of claims 12 and 19, and it would be improper to import a 'power mechanism' limitation into those claims."  (Docket No. 129 at 13). Wonderland then asserts that because Claim 1 separates the "motion mechanism" from the "motor," the '609 Patent draws a bright line distinction between these claim terms, and the "motion mechanism" cannot include a "motor."   (Docket No. 140 at 5-6).  To that end, Wonderland does not rely on claim differentiation, but relies on the internal consistency of the claims and specification of the '609 Patent.  (Docket Nos. 129 at 4, 13, 17; 140 at 6).

After reviewing the intrinsic evidence, the Court finds that the term "for driving" appears frequently throughout the claim terms and the specification.  Several examples include: (1) the entire invention of the '609 Patent is held out to be a "driving device" for infant rocking chairs; (2) Claim 1 recites "a motor for driving said first movable member"; (3) Claims 12-14 recite "a first motion mechanism … for driving said base to move back and forth on said bottom seat"; and (4) Claims 12-14 and 19-20 recite "a second motion mechanism … for driving said supporting element to move up and down relative to said base."  *See* '609 Patent col. 6 l.48 to

col. 8 l.59, (Docket No. 1-2 at 21-22). The first example suggests that "driving" refers to the concept of "powering or creating motion," the second example suggests that "driving" may not automatically include a "motor," and the third and fourth examples suggest that "driving" refers to "controlling or directing motion." Claims 19-20 further recite a first motion mechanism without the "for driving" limitation. *See id.* col. 8 ll.46-49, (Docket No. 1-2 at 22).

The claim drafters, moreover, used the term "for driving," rather than "contribute to or facilitate driving," which suggests that "for driving" should mean more than just contributing to or facilitating driving. At the same time, the claim drafters did not require "for driving" to include "each and every component that contributes to driving" because the drafters separately recited a "motor for driving" in Claim 1, and this motor includes both a "crank" and a "link." *See id.* col. 6 ll.60-67, (Docket No. 1-2 at 21). Therefore, the Court adopts an intermediate construction, "controlling or directing motion," that does not require all of the components that contribute to driving, but still requires a minimum level of control or direction of the motion.

<u>Construction</u>

The Court construes the term "for driving" to denote "controlling or directing motion."

**b.      Between**

Wonderland argues, in the alternative, that should the Court adopt a construction that requires a motion mechanism to include all the components that contribute to driving, the Court must also construe the term "between." The two potential constructions, according to Wonderland, are:

(1)      "in intermediate relation to" (Wonderland); or
(2)      "in the space that separates"
         (Thorley's position, according to Wonderland).

(Docket No. 140 at 4). Wonderland maintains that "the motor and gearing of the embodiments of the '609 Patent (like that of the MamaRoo device) are not directly below the base," and "thus are at least arguably not 'between' the base and the bottom seat." *Id.* at 7. Wonderland also asserts that Thorley has admitted that most (but not all) of the driving components are "between" the base and the bottom seat. *Id.* at 7-9.

The Court finds that the claim drafters used precise language to specify the location of the first motion mechanism of Claim 12, i.e., the first motion mechanism is "disposed between said base and said bottom seat." *See* '609 Patent col. 8 ll.5-6, (Docket No. 1-2 at 22). This precise location does not appear to be an accident because "between" appears frequently throughout the claim language. Two other examples in Claim 12 are: (1) the "second motion mechanism disposed between said supporting element and said bottom seat"; and (2) the "base disposed between said seat body and said bottom seat." *Id.* col. 8 ll.1-2, 8-9, (Docket No. 1-2 at 22). The claim drafters could have placed the first motion mechanism between the *supporting element* and the bottom seat as they set forth for the second motion mechanism, but they did not do so. One reason drafters may have specified the precise location of the first motion mechanism could be to distinguish prior art, e.g., Nordella, which appears to contain a power mechanism that may not be disposed between a "base" and "bottom seat." *See* § IV.A.3, *supra*.

Claim 19, moreover, does not use the term "between" to limit the first motion mechanism, but it indicates that the motion mechanism is "disposed at the bottom seat." *See* '609 Patent col. 8 ll.46-47, (Docket No. 1-2 at 22). Claim 19 indicates that (1) the claim drafters were aware of their use of the term "between," and (2) they used the terms, "disposed at the bottom seat" to specify a more approximate location of "at the bottom seat." For similar reasons, Wonderland's argument that the motor and gearing are not "directly below the base" in the

preferred embodiments of the '609 Patent is unavailing. All of the preferred embodiments could map to claims other than Claims 12-14 because Claims 12-14 require the first motion mechanism to be disposed between the base and the bottom seat. Claims 19-20, however, do not have this precise location requirement and may correspond to the aforementioned preferred embodiments.

<u>Construction</u>

Therefore, the Court finds that the claim drafters used the term "between" with precision to specify the location of an object "in the space that separates."

**2.     First Motion Mechanism Disposed Between … For Driving**

Turning now to the "first motion mechanism disposed between … for driving" limitation, Thorley argues that (1) the mamaRoo's wheels and rails do not meet the first motion mechanism because they do not include the gear and linkage, and (2) the gear and linkage of the mamaRoo is not disposed between the base and the bottom seat. (Docket Nos. 122 at 9-13; 105 at 13-16). Because Wonderland does not dispute that the "gearing and linkage … are for driving the base to move back and forth on the bottom seat," (Docket No. 142 at 2-3), the dispositive issues here concern whether the first motion mechanism *must include* the gearing (or gear) and linkage, and whether the gear and linkage is disposed *between* the base and the bottom seat. (Docket No. 140 at 5-9). As noted earlier, the parties agreed that "motion mechanism" denotes a "combination of machine parts," *see* Revised (and corrected) Joint Disputed Claim Terms Chart, (Docket No. 46), and the Court construed the term "for driving" to mean "controlling or directing motion," and the term "between" to denote "in the space that separates," *see* § IV.C.1, *supra*.

Wonderland contends that the first motion mechanism need not by itself drive the base back and forth, i.e., it need not include the motor and every machine part that contributes to the back and forth motion of the base. (Docket No. 140 at 6). Wonderland relies on Thorley's

expert, Dr. Clark, who admitted: "One might consider an actuator to be part of a motion mechanism, but it doesn't have to be."  Clark Dep. at 68:16-69:12, (Docket No. 128-1 at 18-19). Wonderland alternatively argues that should the Court find that the first motion mechanism must include all of the components that are "for driving," it should still find that all of these components are disposed "between" the base and the bottom seat.  (Docket No. 140 at 9).



Figure 5: Gear and linkage from the accused mamaRoo device.  (Docket No. 142 at 2-3).



Figure 6: Base and bottom seat from the accused mamaRoo device.  *See* Hopke Decl. ¶ 9, (Docket No. 107-5 at 6).

In this Court's estimation, however, no reasonable jury could find that the mamaRoo contains a first motion mechanism, because Wonderland has admitted that "the gearing and linkage identified in the image below [*see* Figure 5, *supra*] are for driving the base to move back and forth on the bottom seat." (Docket No. 142 at 2-3). Even if the motor or actuator is not part of the first motion mechanism, as Wonderland asserts, Claim 12 of the '609 Patent expressly recites that the first motion mechanism is "for driving said base to move back and forth on said bottom seat." *See* '609 Patent col. 8 ll.6-8, (Docket No. 1-2 at 22). The gear and linkage therefore read directly onto the claim language for Claim 12 in the same way as the first motion mechanism. *See id.* Given Wonderland's admission that the gearing and linkage are "for driving" in the precise manner set forth in Claim 12, the Court finds that no reasonable jury could conclude that the gearing and linkage are not part of the first motion mechanism.

To the extent that Wonderland argues that the gearing and linkage should be associated with the motor rather than with the first motion mechanism, Wonderland is incorrect because the Court finds that the motor is not necessary for the gearing and linkage to "control or direct" the first motion mechanism. *See* § IV.C.1.a, *supra*. Even when the motor is removed or turned off, the gear and linkage still "control or direct" the first motion mechanism because the range of the back and forth motion is confined within a preset path based on the diameter of the gear and length of the linkage. *See* Figure 5, *supra*. The first motion mechanism can thus include the gear and linkage even though it need not by itself drive the base back and forth, i.e., it need not include the motor and every machine part that contributes to the back and forth motion.

The Court further finds that the aforementioned gearing and linkage are not "disposed between said base and said bottom seat," *see* '609 Patent col. 8 ll.6-8, (Docket No. 1-2 at 22), because the gearing and linkage are not "in the space that separates" the base and the bottom

seat, *see* § IV.C.1.b, *supra*. Even Wonderland's own expert, Larry Drobinski,[6] admitted in deposition testimony that the gear and linkage, *see* Figure 5, *supra*, are not disposed between the base and the bottom seat, *see* Figure 6, *supra*. *See* Drobinski Dep. at 18:7-18 (as to the linkage), 19:16-20:7 (as to the gear), and 20:4-14 (as to location between the base and the bottom seat), (Docket No. 124-6 at 19-21). Accordingly, the Court finds that the mamaRoo does not contain a first motion mechanism because the first motion mechanism includes the gear and linkage, and the gear and linkage are not disposed between the base and bottom seat. Because Claims 13-14 are dependent on Claim 12, moreover, the Court also finds that the mamaRoo does not infringe Claims 13-14. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed."). To that end, the Court grants Thorley's Motion for Summary Judgment of Non-Infringement with respect to Claims 12-14, and denies Wonderland's Motion with respect to the aforementioned claims.

### 3. Second Motion Mechanism

As for the second motion mechanism, Thorley asserts that the double scissor mechanism is not "for driving," but only for supporting the platform. Thorley contends that the motor and gearing cause the crank and link to rotate, which powers the platform's up and down motion, as illustrated in Figure 7, *infra*, (Docket No. 122 at 16), and as presented by Thorley's engineer, Mr. Hopke,[7] *see* Hopke Decl. at ¶¶ 5-10, (Docket No. 107-5 at 3-6). Thorley maintains that the

---

[6] Mr. Drobinski is the President of Global Development and Sourcing, Inc. ("GDS") and has been with GDS since 1994. Drobinski Rep. at 8, (Docket No. 124-7 at 10). He received an M.S. in mechanical and management engineering and a B.S. in chemical engineering from Newark College of Engineering. *Id.* Prior to GDS, he worked at Graco Children's Products from 1985 to 1994, serving as General Manager of West Coast Operations, Vice President of Product Development, and Vice President and General Manager. *Id.* at 9, (Docket No. 124-7 at 11).

[7] Mr. Hopke is the Director of Engineering at Thorley. Hopke Decl. at ¶ 1, (Docket No. 107-5 at 2). He received a B.S. in mechanical engineering from Carnegie Mellon University and an M.S. in mechanical engineering from Johns Hopkins University. *Id.* at ¶ 1, (Docket No. 107-5 at 2). At Thorley, Mr. Hopke was involved in "virtually every

double scissor mechanism only moves up and down in unison with the platform because of the way in which it is attached to the platform, i.e., the double scissor mechanism does not "drive" the platform up and down. (Docket No. 122 at 16-17). Thorley relies on its expert, Dr. Clark, who opines that the double scissor mechanism "is not for driving the platform to move up and down," based on his "solid model of the device using Inventor™ software by AutoDesk™" and "measurements from an existing mamaRoo device." Clark Rebuttal Rep. at 5-6, (Docket No. 107-4 at 6-7). Thorley also relies on Wonderland's expert, Mr. Drobinski, who stated that the second motion mechanism is probably not for driving the supporting element up and down, but to counterbalance the weight of a child. *See* Drobinski Dep. at 33:20-34:19, (Docket No. 107-6 at 34-35). Thorley, therefore, argues that even though the supporting platform does move up and down, that motion is not "caused" by the double scissor mechanism. (Docket No. 105 at 10).



Figure 7: Double scissor mechanism, gearing, crank, link, platform, and coil spring from the accused mamaRoo device. *See* Hopke Decl. ¶ 5, (Docket No. 107-5 at 3).

aspect relating to updating, redesigning, and troubleshooting the mamaRoo, and [he has] worked on each commercial version of the mamaRoo." *Id.* at ¶ 3, (Docket No. 107-5 at 2).

However, Thorley's argument that the double scissor mechanism only supports the platform without contributing to its motion is not persuasive to the Court because even absent the motor and gearing, the platform's motion would be confined to a predefined path of up and down as a result of the double scissor mechanism. The double scissor mechanism could serve the same function as the wheels and rails of the first motion mechanism, because both motion mechanisms control or direct motion along a preset path. Thorley's own patent application corresponding to the mamaRoo,[8] for example, indicates that the "[v]ertical reciprocating assembly 63 includes a double scissor mechanism having a first double scissor mechanism 95 operatively coupled to a second double scissor mechanism 97 such that their movement is synchronized." *See* Thorley Publ. Patent Appl. at 4, (Docket No. 107-7 at 23). Although Thorley denies that its patent application is material to infringement, the application nevertheless shows that a reasonable jury could find that the double scissor mechanism is "for driving" the up and down movement of the platform by "controlling or directing" vertical movement.

The Court also finds that Thorley's argument concerning the coil spring is not convincing despite Thorley's position that Wonderland did not raise this argument at an earlier time. (Docket Nos. 122 at 18; 135 at 7-8). "[C]oncerns in waiver relate to issues such as … whether there was an adequate opportunity for response and evidentiary development by the opposing party at trial." *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1347 (Fed. Cir. 2001) (holding that arguments "based on a specification in evidence and that are in support of an existing claim construction are not barred by the doctrine of waiver for the sole reason that they were not first presented to the trial court"). Although "Federal Circuit law controls waiver in the context of claim construction arguments," the Federal Circuit has also noted that "[w]aiver is a

---

[8] Thorley admitted that it has filed Patent Application US 2010/0052376, which generally relates to features of the commercial mamaRoo product. (Docket No. 123 at 2).

procedural issue." *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1250-51 (Fed. Cir. 2005). To that end, the Third Circuit has "previously stated that an argument omitted before the district court may nevertheless be considered where it "is closely related to arguments that [the parties] did raise in that court." *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 417 (3d Cir. 2011).

Here, the picture of Nordella, *see* Figure 7, *supra*, illustrates that the coil spring could counteract the effect of gravity, by "reducing" the speed of the platform on the way down, and "assisting" the motor in pushing the platform back up. The coil spring argument is "closely related" to that of the double spring mechanism. *See Tri-M Grp., LLC*, 638 F.3d at 417. Even though Thorley asserts prejudice from a "new infringement theory," (Docket No. 135 at 8), the Court is not convinced because any "solid model" analysis of the mamaRoo's double scissor mechanism, *see* Clark Rebuttal Rep. at 5-6, (Docket No. 107-4 at 6-7), without consideration of the impact of the coil spring on the mechanism would be incomplete. Thorley's patent application, moreover, indicates that "the resistive mechanical element 123 comprises a compression spring (not shown) … to assist vertical expansion of the double scissor mechanism and resist vertical contraction of the double scissor mechanism." *See* Thorley Publ. Patent Appl. at 4, (Docket No. 107-7 at 23). Given the content of Thorley's patent application, a reasonable jury could find that the coil spring assists in the vertical expansion and contraction of the double scissor mechanism, thereby controlling or directing the up and down movement of the platform. *See id.*

Thorley may have even designed the mamaRoo with the coil spring in mind to counteract the effects of gravity (and the baby's weight) on the motor. *See id.*, (Docket No. 107-7 at 23) ("Resistive mechanical element 123 also has the benefit of counteracting the effects of gravity because it acts to reduce downward movement."). The coil spring could be a safety feature to

prevent the platform from a precipitous drop should the motor suddenly malfunction. The combination of the double scissor mechanism and coil spring could further control or direct motion by gradually reducing the speed of the up and down motion of the platform after the motor is shut off. Nevertheless, the coil spring probably does not provide all of the power for vertical motion because the motor provides external power through the gear, crank, and link. *See* Clark Rebuttal Rep. at 7, (Docket No. 107-4 at 8).

In sum, the Court finds that the second motion mechanism does not clearly resolve in favor of either party at summary judgment. A reasonable jury could find that the double scissor mechanism and coil spring materially assist in driving the up and down motion of the platform. *See Conoco, Inc.*, 460 F.3d at 1357. That jury could also find that the double scissor mechanism and coil spring do not drive the up and down motion of the platform. Therefore, the Court denies both parties' motions for summary judgment on the issue of infringement with regard to the second motion mechanism.

### 4. Guiding Elements

Having addressed both the first and second motion mechanisms, the Court last considers whether the accused mamaRoo does not infringe Claim 14 based on the "guiding elements" limitation. Thorley argues that the mamaRoo does not meet the "guiding elements" limitation because (1) the top surface of the base does not "direct movement of the wheels," and (2) Wonderland admits that the visible "indication lines" are not guiding elements. (Docket No. 122 at 19-23). In its Claim Construction Order, the Court construed "guiding elements" as "a set of tracks which direct movement." (Docket No. 59). To the extent that Wonderland maintains that the Court must again construe the term "track," (Docket No. 140 at 4), Wonderland is incorrect because "track" does not appear within the claim terms of the '609 Patent, *see* '609

Patent col. 6 l.48 to col. 8 l.59, (Docket No. 1-2 at 21-22). The Court also explained in its Claim Construction Opinion that the term "tracks" is "appropriate to define the physical components of the 'guide path unit,' but allows for a broader definition beyond the embodied parallel rods." (Docket No. 58 at 25). Even though a broader definition may be appropriate, Wonderland's example of a racing track, (Docket No. 140 at 13), does not sway the Court because a racing track does not guide runners by limiting their vertical movement any more than the surface of the Earth limits their vertical movement. The surface of the Earth limits the vertical movement of the runners regardless of the existence of the racing track on that surface.

Turning to the second pair of guiding elements allegedly contained within the mamaRoo, Thorley argues that the top surface of the base platform does not direct movement of the wheels because the wheels would still move in the same path even without the surface. To the extent that Thorley argues that the surface only "incidentally coincides" with the path of the wheels, (Docket No. 122 at 22), Thorley appears to be incorrect. A reasonable jury could conclude that the top surface controls or directs the vertical movement of the wheels because the top surface would limit the vertical movement of the wheels, even absent the double scissor mechanism, e.g., if the double scissor mechanism fails. Even though Wonderland's own expert, Mr. Drobinski, admits that "the bearing surface merely supports and keeps the rollers positioned or rolling on the/a horizontal plane" and that "[t]he scissors mechanism and its rigidity maintain side to side stability," Drobinski Rep. at 4, (Docket No. 124-7 at 6), the Court finds that, at a minimum, determining whether the top surface plays any role, albeit minimal, in the vertical—or lack of vertical—movement of the wheels is a factual issue for the jury.

Nevertheless, Thorley also argues that there "is no groove, rail, or other physical component extending from or embedded within this surface that could even potentially engage

with or direct movement of the wheel." (Docket No. 122 at 21). Given that Wonderland has admitted that the "indication lines" are not the accused guiding elements, (Docket No. 142 at 8), the Court finds that there are no other tracks—visible or otherwise—contained on the top surface of the base platform that could serve as guiding elements. Although the Court decided during claim construction that a broader definition than parallel rods was appropriate for the term "guiding elements," (Docket No. 58 at 25), the Court agrees with Thorley that a finding that the top surface of the base platform meets the "guiding elements" limitation would read that limitation out of the claim language. (Docket No. 122 at 22). To that end, the Court finds that the mamaRoo does not contain the "guiding elements" limitation as required by Claim 14.

Finally, to the extent that Wonderland contends that Thorley's request for reexamination weighs in favor of infringement, (Docket No. 96 at 5), this argument confuses the issues because infringement is a separate inquiry from invalidity. "Though an invalid claim cannot give rise to liability for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity." *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983); *see also Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) ("A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement."); *Pandrol USA, LP v. Airboss Ry. Products, Inc.*, 320 F.3d 1354, 1364 (Fed. Cir. 2003) ("Supreme Court precedent and our cases make clear that patent infringement and patent validity are treated as separate issues."). Therefore, Wonderland's argument to the contrary is meritless.

## V.    CONCLUSION

As there are genuine issues of material fact between the parties concerning whether the Nordella prior art reference satisfies all of the limitations of Claims 12-14 and 19-20 of the '609

Patent, whether Nordella constitutes analogous art, and whether there was sufficient motivation to combine Nordella and the Caster prior art references, Thorley's Motion for Summary Judgment of Invalidity, (Docket No. 108), is DENIED.  As for the parties' Cross-Motions for Summary Judgment on the issue of infringement of Claims 12-14 and 19-20 by the accused mamaRoo device, (Docket Nos. 95, 104), these Motions are GRANTED, in part and DENIED, in part; they are GRANTED as to non-infringement of Claims 12-14 only, in favor of Thorley, and DENIED in all other respects.  An appropriate Order follows.

*/s Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   December 19th, 2013
cc/ecf: All counsel of record