**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WONDERLAND NURSERYGOODS CO., LTD., | ) ) ) |
| Plaintiff, | ) ) ) Civil Action No. 12-196 |
| vs. | ) Judge Nora Barry Fischer ) |
| THORLEY INDUSTRIES, LLC, *d/b/a* 4MOMS, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

## I.    INTRODUCTION

This patent infringement action by Plaintiff Wonderland NurseryGoods Co., Ltd. ("Wonderland") against Defendant Thorley Industries, LLC, d/b/a 4Moms ("Thorley") was set to commence jury selection and trial on January 27, 2014, per the agreed upon Pretrial Order in this case.  (Docket No. 63).  Prior to jury selection, Wonderland filed several motions in limine seeking pretrial rulings on the admissibility of certain evidence at trial.  Presently pending before the Court is Wonderland's Motion in Limine No. 1 to exclude references to the *inter partes* reexamination of the patent in suit.  (Docket No. 178).  The Court heard argument on said Motion during the Final Pretrial Conference on January 21, 2014, (Docket No. 205), after which Wonderland filed a Reply, (Docket No. 213), and Thorley filed a Sur-Reply, (Docket No. 224).

Wonderland also objected to Defense Exhibit D-4, the prosecution history of the *inter partes* reexamination, (Docket No. 173), which this Court sustained, (Docket No. 216), as Defense Exhibit D-4 spanned 989 pages.  Thorley immediately moved for reconsideration, (Docket No. 217), and Wonderland filed a Response, (Docket No. 226), concerning three documents contained within Defense Exhibit D-4.  These documents are the Right of Appeal

Notice (Defense Exhibit D-04-346 to D-04-452), the First Office Action, (Defense Exhibit D-04-747 to D-04-777), and the Order Granting Request for *Inter Partes* Reexamination, (Defense Exhibit D-04-727 to D-04-742) (collectively the "Reexam Documents").[1]

On January 22, 2014, the Court issued an Order to Show Cause concerning: (1) whether the Court should postpone trial until after the final decision on any administrative appeal at the PTO; and (2) whether Wonderland should irrevocably withdraw, with prejudice, the '609 Patent. (Docket No. 210). The parties filed their responses to the Show Cause Order on January 24, 2014, (Docket Nos. 219, 220), and this Court held a Motion Hearing on the aforementioned issues on January 27, 2014, (Docket No. 228). Upon consideration of all of the parties' filings, the parties' arguments at the Final Pretrial Conference held on January 21, 2014 [205], the parties' arguments at the Motion Hearing held on January 27, 2014 [228], and for the following reasons, Thorley's renewed Motion to Stay [219] is GRANTED, and Thorley's Motion for Reconsideration [217] and Wonderland's Motion to Exclude [178] are DENIED, as premature.

## II.    BACKGROUND

On January 12, 2012, Thorley filed a request for the *inter partes* reexamination of U.S. Patent No. 8,047,609 (the "'609 Patent") (filed Dec. 3, 2010), (Docket No. 1-2 at 2), at the U.S. Patent and Trademark Office ("PTO"). *See* Right of Appeal Notice, (Docket No. 209-3 at 2). The '609 Patent is directed at "infant rocking chairs," with "a driving device for driving a seat body of an infant rocking chair to move back and forth as well as up and down." *See* '609 Patent col. 1 ll.15-19, (Docket No. 1-2 at 19). In its *inter partes* reexamination request, Thorley asserted challenges against claims 1, 2, 3, 12, 13, 19, and 20 of the '609 Patent. (Docket No. 15-1 at 3). One month later, on February 14, 2012, the PTO issued an Order Granting Request for

---

[1] The Court notes that the Reexam Documents are very lengthy technical and legal documents that would be difficult for an average juror to comprehend, with the Right of Appeal Notice spanning 105 pages, the First Office Action spanning 29 pages, and the Order Granting Request for *Inter Partes* Reexamination spanning 14 pages.

*Inter Partes* Reexamination, concluding that there was a reasonable likelihood that Thorley would prevail as to claims 1, 2, 12, 13, 19, and 20. (Defense Exhibit D-04-727 at 730). Also, on February 14, 2012, the PTO issued a First Office Action rejecting all of the claims under reexamination, i.e., claims 1, 2, 12, 13, 19 and 20. (Defense Exhibit D-04-747 at 749). The First Office Action expressly stated that claims 3-11 and 14-18 were not subject to reexamination. *Id.*

Two days before the PTO issued the First Office Action, on February 12, 2012,[2] Wonderland filed this case against Thorley for infringement of the '609 Patent by the accused mamaRoo device.[3] (Docket No. 1). Subsequently, on February 24, 2012, Thorley filed a Motion to Stay the instant proceedings pending the *inter partes* reexamination of the '609 Patent, (Docket No. 14), which this Court denied in a Memorandum Opinion and Order dated March 14, 2012, *Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, 858 F. Supp. 2d 461, 462 (W.D. Pa. 2012). At the time of the Court's ruling, several facts weighed against granting the stay. These facts included (1) the prejudice to Wonderland due to delay, given direct competition between Wonderland and Thorley, and (2) the inability of the reexamination proceedings to resolve completely the issues in this case, because Wonderland asserted that Thorley infringed claims 3 and 14 of the '609 Patent, both of which were not subject to reexamination. *Id.*

Thorley did not seek reconsideration,[4] and a Case Management Conference was set for April 14, 2012. (Docket No. 29). Pursuant to the Court's Initial Patent Scheduling Order, (Docket No. 30), Wonderland served its Infringement Contentions on May 10, 2012, (Docket

---

[2] The Court understands from arguments of counsel that there may be a history behind Thorley's request for *inter partes* reexamination of the '609 Patent and Wonderland's filing of the instant case before this Court, but the Court has not been made privy to any correspondence between the parties leading up to the reexamination and instant case.

[3] The Court limits its discussion to the facts necessary to resolve the present Motion. For a more robust discussion of the facts of this case, see the Court's Memorandum Opinion at Docket No. 157, *Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, Civ. No. 12-196, 2013 WL 6731899 (W.D. Pa. Dec. 19, 2013).

[4] "Any Motions for reconsideration shall be filed within seven (7) days. Any responses to same shall be filed within seven (7) days thereafter." *See* PRACTICES AND PROCEDURES OF JUDGE NORA BARRY FISCHER II.M (eff. Mar. 23, 2010); *see also Linhart v. Zitelli & Brodland, P.C.*, Civ. No. 10-530, 2011 WL 5188061 (W.D. Pa. Nov. 1, 2011).

No. 177-3), and Thorley served its Non-Infringement and Invalidity Contentions on May 24, 2012, (Docket No. 177-4). The parties met and conferred regarding the disputed claim terms, and filed a Revised (and corrected) Joint Disputed Claim Construction Chart on September 25, 2012. (Docket Nos. 45-46). The Court held a Markman Hearing on September 27, 2012, (Docket No. 47), and ordered preparation of the transcript, (Docket No. 51). On January 11, 2013, after receiving the Revised (and corrected) Claim Construction Chart, the transcript of the Markman Hearing, and the Pre-Hearing and Post-Hearing Briefs, (Docket Nos. 39-43, 45-47, 51, 53-54), the Court issued a Memorandum Opinion and Claim Construction Order, *Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, Civ. No. 12-196, 2013 WL 141546, *1 (W.D. Pa. Jan. 11, 2013). Based on the Court's Claim Construction, Wonderland entered into a stipulation of non-final judgment of non-infringement of claims 1-3 of the '609 Patent. (Docket No. 66).

In its Claim Construction Opinion, the Court found that the term "infant rocking chair" within the preamble was limiting because "the patent shows that the driving device does not just happen to be used in infant rocking chairs; its fundamental purpose is to provide motion that mimics a person holding an infant in his or her arms, 'resulting in infant comfort.'" *Wonderland NurseryGoods Co.*, 2013 WL 141546, at *6 (quoting '609 Patent col.1 ll.20-38). To that end, "[r]ecitation of 'infant rocking chair' in Claims 1, 12, and 19 [wa]s necessary to understand the subject matter encompassed by the claim." *Id.* (citing *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1358 (Fed. Cir. 2012)). The Court also noted the title of the patent, "Infant Rocking Chair and Driving Device for Driving the Same." *Id.* Thus, the Court found that "the preamble term, 'infant rocking chair' 'give[s] life' to the claim and shall be considered limiting."[5] *Id.* (citing *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)).

---

[5] In the Right of Appeal Notice against the '609 Patent, however, the PTO examiner did not find the term "infant rocking chair" to be limiting. Instead, the PTO examiner found that "Nordella discloses a rocking chair because it

Following the Court's claim construction, expert discovery commenced on March 15, 2013 and concluded on May 30, 2013, with summary judgment and *Daubert* motions due on July 1, 2013. (Docket No. 61). Meanwhile, on March 14, 2013, Wonderland filed an early Motion for Summary Judgment of Infringement of claims 12-14 and 19-20, (Docket Nos. 68-72, 76-79, 81-83), which the Court denied, without prejudice, (Docket No. 84). On April 12, 2013, Wonderland also filed a Motion to Strike the Report of Thorley's Expert, (Docket Nos. 73-75), which the Court denied in a Memorandum Opinion, *see Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, Civ. No. 12-196, 2013 WL 2471801, *1 (W.D. Pa. June 7, 2013).

On July 1, 2013, the parties filed Cross-Motions for Summary Judgment of Non-Infringement, (Docket Nos. 104-07), and Infringement, (Docket Nos. 95-98), to which the parties filed Responses, (Docket Nos. 122-25, 129-31), and Replies, (Docket Nos. 135, 140-42). Thorley also filed two Motions for Summary Judgment of Invalidity of the '609 Patent based on anticipation and obviousness, (Docket Nos. 108-11), and the written description requirement under § 112, (Docket Nos. 100-02), as well as a *Daubert* Motion to Strike the Report of Wonderland's Expert, (Docket No. 112-13), to which Wonderland filed Responses, (Docket Nos. 113, 126-28, 132-33), and Thorley filed Replies, (Docket Nos. 121, 136-39). The Court heard oral argument on said Motions on August 26, 2013, (Docket Nos. 143-44), after which the Court ordered preparation of the transcript, filed of record on September 13, 2013 at Docket No. 145.

The Court denied Thorley's Motion to Strike on December 5, 2013, *see Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, Civ. No. 12-196, 2013 WL 6328772, *1 (W.D. Pa. Dec. 5, 2013), and its Motion for Summary Judgment of Invalidity under the Written Description requirement on December 16, 2013, *see Wonderland NurseryGoods Co. v. Thorley Indus., LLC*,

---

discloses a chair," and "[i]nasmuch as the seat would be capable of holding an infant, the chair may be considered to define an infant rocking chair." *See* Right of Appeal Notice at 31, 35, 44-48, (Docket No. 209-3 at 34, 38, 47-51).

Civ. No. 12-196, 2013 WL 6586180, *1 (W.D. Pa. Dec. 16, 2013).  On December 19, 2013, the

Court granted in part and denied in part the parties' remaining Motions for Summary Judgment.

*Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, Civ. No. 12-196, 2013 WL 6731899, *1

(W.D. Pa. Dec. 19, 2013).  The Court granted summary judgment of non-infringement of claims

12-14 and denied summary judgment on invalidity and infringement in all other respects.  *Id.*

After the Court's rulings on summary judgment, the parties prepared for jury selection

and trial on the issues of infringement and validity of claims 19 and 20 of the '609 Patent

pursuant to the Court's Pretrial Order.  (Docket No. 63).  As noted, Wonderland filed several

motions in limine on December 27, 2013, (Docket Nos. 162-67, 178-82), to which Thorley

responded on January 9, 2014, (Docket Nos. 194-96).  Thorley also filed a Motion to Exclude

Wonderland's Amended Infringement Contentions and Supplemental Expert Report on January

3, 2014, (Docket No. 176), to which Wonderland filed a Response on January 9, 2014, (Docket

No. 197), and on which the Court heard oral argument on January 16, 2014, (Docket No. 199).

A day later, the Court granted Thorley's Motion to Exclude.  *Wonderland NurseryGoods Co. v.

Thorley Indus., LLC*, Civ. No. 12-196, 2014 WL 199789, *1 (W.D. Pa. Jan. 17, 2014).

The Court heard oral argument on Wonderland's motions in limine at the Final Pretrial

Conference on January 21, 2014, (Docket No. 205), after which the Court denied Wonderland's

motion to exclude patents granted to Thorley, *Wonderland NurseryGoods Co. v. Thorley Indus.,

LLC*, Civ. No. 12-196, 2014 WL 241751, *1 (W.D. Pa. Jan. 22, 2014), and granted its motion to

exclude references to other litigation, *Wonderland NurseryGoods Co. v. Thorley Indus., LLC*,

Civ. No. 12-196, 2014 WL 289446, *1 (W.D. Pa. Jan. 22, 2014).  The Court also made pretrial

rulings on objections to trial witnesses; exhibits; and designations of depositions, admissions,

and interrogatories.[6]  (Docket Nos. 208, 214-216, 218, 230).  Within one day of the Court's Order sustaining Wonderland's objections to Defense Exhibit D-4, (Docket No. 216), Thorley filed a Motion for Reconsideration concerning the Reexam Documents, (Docket No. 217).

Given the complexity of the issues before the Court and their effect on the Proposed Jury Instructions, the Court issued a rule upon the parties to show cause concerning: (1) why the trial in this case should not be stayed until after the final resolution of reexamination proceedings, and (2) why Wonderland should not irrevocably withdraw, with prejudice, the '609 Patent.  (Docket No. 210); *see Oracle America, Inc. v. Google, Inc.*, Civ. No. 10-03561, (N.D. Cal. Mar. 1, 2012) (Docket No. 757) (Order to answer why trial should not be postponed and why plaintiff should not irrevocably withdraw, with prejudice, patents subject to final office actions).  Following the parties' Responses to the Court's Show Cause Order, (Docket Nos. 219-20), the Court convened a Motion Hearing on January 27, 2014, (Docket No. 228), after which the Court granted Thorley's renewed Motion to Stay, with this Memorandum Opinion to follow, (Docket No. 229). The Court now turns to its rationale for granting a stay in this case, on the eve of trial.

## III.   LEGAL STANDARD

"The Supreme Court has long recognized that district courts have broad discretion to manage their dockets, including the power to grant a stay of proceedings."  *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848-49 (Fed. Cir. 2008).  A court's power to stay proceedings "is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel and for litigants."  *See Bechtel Corp. v. Local 215, Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)); *see also Gould v. Control Laser*

---

[6] The Court also circulated to counsel working drafts of the Jury Voir Dire, the Preliminary Charge to the Jury, and the Jury Verdict Form.  *See* Motion Hearing Tr. 42:3-42:9 (Jan. 27, 2014).

*Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983); *Gunduz v. U.S. Citizenship and Immigration Services*, Civ. No. 07-780, 2007 WL 4343246, *1 (W.D. Pa. Dec. 11, 2007) (Ambrose, C.J.) (citing *Landis* and *Bechtel*). A court must exercise its judgment in weighing the competing interests and maintain an even balance when staying a proceeding. *See Landis*, 299 U.S. at 254-55; *Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 737-38 (3d Cir. 1983); *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).

In district court cases, "a stay should ordinarily not be granted unless there is a substantial patentability issue raised in the inter partes reexamination proceeding." *Procter & Gamble Co.*, 549 F.3d at 849. "[O]ne purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled)." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) (quoting *Gould*, 705 F.2d at 1342). Another purpose is to "'provid[e] the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).'" *Cooper Notification, Inc. v. Twitter, Inc.*, Civ. No. 12-1615, 2013 WL 4611752, *5 (Fed. Cir. Aug. 30, 2013) (quoting *Gould*, 705 F.2d at 1340). "[W]hen a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Fresenius USA, Inc.*, 721 F.3d at 1340.

Moreover, the "effect of the cancellation of a patent pursuant to the statute is 'no insult to ... Article III.'" *Id.* (quoting *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 604, *on reh'g*, 771 F.2d 480 (Fed. Cir. 1985) ("A defectively examined and therefore erroneously granted patent must yield to the reasonable Congressional purpose of facilitating the correction of governmental mistakes. This Congressional purpose is presumptively correct, and we find that it carries no insult to the Seventh Amendment and Article III.")). "Congress has expressly delegated reexamination authority to the PTO under a statute requiring the PTO to cancel rejected claims,

and cancellation extinguishes the underlying basis for suits based on the patent." *Id.* at 1344, 1346 ("[I]n 1928, Congress acknowledged that cancelled claims were void *ab initio*. … And, in 1980, it made that provision applicable to reexamination.").

Thus, "[w]hen a district court stays patent validity proceedings before it until completion of a reexamination proceeding, that stay must be accepted if the purpose of the reexamination statute is to be preserved." *Gould*, 705 F.2d at 1342. However, if "the copending actions in the district court and the PTO are neither duplicative nor dependent on one another, there is neither any need nor any justification for staying the interfering patents suit to await the outcome of the PTO reexamination." *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341-42 (Fed. Cir. 1998). "In deciding whether to stay litigation pending reexamination, courts typically consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Soverain*, 356 F. Supp. 2d at 662; *see also Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999). "Essentially, courts determine whether the benefits of a stay outweigh the inherent costs based on these factors." *Rmail Limited v. Amazon.com, Inc.*, Civ. No. 10-258 (E.D. Tex. Jan. 30, 2014) (Docket No. 563 at 12-13) (quoting *EchoStar Technologies Corp. v. TiVo, Inc.*, Civ. No. 5:05-CV-81, 2006 WL 2501494, *1 (E.D. Tex. July 14, 2006)).

## IV.    MOTION TO STAY

As a threshold matter, the Court recognizes that Thorley had initially moved to stay this case on February 24, 2012, (Docket No. 14), which the Court denied in a Memorandum Opinion on March 14, 2012, *see Wonderland NurseryGoods Co.*, 858 F. Supp. 2d at 462. However, several factual differences have now developed since the date of the Court's initial ruling

denying the stay. First, Wonderland and Thorley are no longer direct competitors. Second, a final office action has issued against the only remaining claims in dispute in this case, and a stay would simplify several complex issues before the Court concerning the potential evidence at trial and the Proposed Jury Instructions. (Docket Nos. 178-79, 186, 194, 205, 210, 213, 217, 219-20, 224, 226, 228). Third, although discovery is complete and this case was set for trial, all of the Court's pretrial rulings remain in effect, and a new trial date can be set as soon as the Patent Trial and Appeal Board issues a final written decision, and the time for appeal has expired or any appeal has terminated, which includes appeals to the Federal Circuit.[7] *See Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 644-45 (Fed. Cir. 2011). The Court also finds it troubling that Wonderland urges the Court to become part of a "race to the Federal Circuit" against the reexamination proceedings at the PTO.[8] *See* Motion Hearing Tr. 38:18-20 (Jan. 27, 2014).

## A. Undue Prejudice from a Stay

With regard to the first factor, the Court strongly weighs the fact that Wonderland and Thorley are no longer direct competitors, as Wonderland has discontinued the production and sale of the Sweetpeace. In its initial ruling on Thorley's Motion for a Stay in March, 2012, the Court found that the prejudice to Wonderland due to delay as well as the direct competition between the parties weighed against the grant of a stay. *See Wonderland NurseryGoods Co.*, 858 F. Supp. 2d at 462. At oral argument at the Motion Hearing on January 27, 2014, however, counsel for Wonderland admitted that "the Sweetpeace has petered out." *See* Motion Hearing Tr. 13:8-14:1 (Jan. 27, 2014). He instead proffered that Wonderland expects several new future products to be developed, including the Nuna Leaf and "some new high-end gliders." *Id.*

---

[7] The Court recognizes the implications of the Civil Justice Reform Act of 1990, which requires a semi-annual report of the "names of cases that have not been terminated within three years after filing." 28 U.S.C. § 476 (2006).

[8] As this Court discusses in detail in § IV.B.2, *infra*, "Congress has expressly delegated reexamination authority to the PTO under a statute requiring the PTO to cancel rejected claims," *see Fresenius USA, Inc.*, 721 F.3d at 1344, but this Court does not believe that the speed of the invalidity proceedings should determine their outcome.

Yet, counsel for Wonderland provides no evidentiary support for the impact of these new products on his assertion of direct competition between Wonderland and Thorley. As both counsel know, the Court previously reviewed in detail the methodology of Wonderland's damages expert, Mr. Hampton,[9] who concluded that "a consumer would only have had three options for 'high price point' infant rocking chairs (the mamaRoo, the Sweetpeace, and a Fisher Price product), and that consumers would have purchased the Sweetpeace and the Fisher Price product in proportion to their respective historical market shares." *See Wonderland NurseryGoods Co.*, 2013 WL 6328772, at *3. Thus, other than the Sweetpeace, Mr. Hampton offered only two options for consumers looking to purchase a baby rocker within the "high price point" infant rocking chair market; he does not mention the Nuna Leaf or a high-end glider. *Id.*

Mr. Hampton further opined that there were only "two products in the alternative swing market with a price above a target price point, the mamaRoo and the Sweetpeace." *Id.* at *4. Absent the Sweetpeace, only one option existed in the alternative swing market with a price point above the target price point, i.e., the accused mamaRoo. *Id.* Given the above admissions by Wonderland's counsel, *see* Motion Hearing Tr. 13:8-14:1 (Jan. 27, 2014), and the opinion of Wonderland's expert, *see Wonderland NurseryGoods Co.*, 2013 WL 6328772, at *3-4, Wonderland and Thorley can no longer be seen as competitors. Moreover, Wonderland cannot argue that the high price point alternative swing market contains only the Sweetpeace and the accused mamaRoo for purposes of calculating damages, while simultaneously contending that other products compete with the accused mamaRoo to argue against a stay of the trial.

Admittedly, any delay from the current stay could be prejudicial to Wonderland, but delay alone is insufficient to establish undue prejudice. *See Photoflex Products, Inc. v. Circa 3*

---

[9] Mr. Hampton is a Certified Public Accountant. *See* Hampton Report at 2, (Docket No. 114-1 at 6). For a more detailed review of Mr. Hampton's qualifications and his expert opinion, see the Court's Memorandum Opinion denying Thorley's Motion to Strike, *Wonderland NurseryGoods Co.*, 2013 WL 6328772, at *1-6.

*LLC*, Civ. No. 04–03715, 2006 WL 1440363 at *2 (N.D. Cal. May 24, 2006) ("The delay inherent to the reexamination process does not constitute, by itself, undue prejudice."). Wonderland proffered no evidence within the record of any undue prejudice attributable to the current stay. Had time been of the essence, Wonderland would not have waited until February 16, 2012 to file this case, (Docket No. 1 at 4), one month <u>after</u> Thorley filed its request for *inter partes* reexamination, *see* Right of Appeal Notice, (Docket No. 209-3 at 2), and more than three months after the date of issuance of the '609 Patent, *see* '609 Patent, (Docket No. 1-2).

To be sure, in its initial ruling on the stay, the Court agreed that a stay would last at least 36.2 months, *see Wonderland NurseryGoods Co.*, 858 F. Supp. 2d at 463, but reexamination of the '609 Patent has advanced since March 2012 in parallel with discovery and pretrial preparation here. Reexamination is now past the final office action and is on appeal before the Patent Trial and Appeal Board. (Docket Nos. 213 at 2; 224 at 4). And, in the event that the PTO affirms claims 19 and 20 of the '609 Patent without amendment following the final resolution of reexamination proceedings, *see Fresenius USA, Inc.*, 721 F.3d at 1340, all of the Court's pretrial rulings remain in effect, and a new trial date can be scheduled immediately.

Wonderland also admitted that "from the beginning," the "damages in this case [we]re minimal, in comparison to other cases." *See* Motion Hearing Tr. 33:21-24 (Jan. 27, 2014). To the extent that Wonderland sustains any additional damages due to infringement during the stay, it may still seek compensation for those damages. *See Celorio v. On Demand Books LLC*, MDL No. 12-821, 2013 WL 4506411, *1 n.1 (D. Del. Aug. 21, 2013) ("[B]ased on the nature of this suit, Celorio can be compensated through money damages, including any appropriate interest accrued during the stay."); *In re Laughlin Products, Inc.*, 265 F. Supp. 2d 525, 533 (E.D. Pa. 2003) ("[A]ny damages in this case would continue to accrue during the stay (unless tolled).").

Granting a stay on the eve of trial may seem prejudicial to both parties, each of whom have engaged in trial preparation and arranged for witnesses to testify, some of whom are foreign. However, the Court finds that the grant of a stay does not present a clear tactical advantage to Thorley because as noted above, Thorley filed its request for *inter partes* reexamination of the '609 Patent well before Wonderland filed the instant case in this Court. Hence, Wonderland brought this litigation knowing full well that Thorley filed a request for reexamination of the '609 Patent, and that this case could be stayed based on that reexamination.

In *Rmail Limited v. Amazon.com, Inc.*, for instance, the district court granted a stay after finding that the "[p]laintiffs were fully aware of the co-pending California cases, even if their Texas counsel were not." *Rmail Limited v. Amazon.com, Inc.*, Civ. No. 10-258 (E.D. Tex. Jan. 30, 2014) (Docket No. 563 at 12). "Plaintiffs clearly knew of the serious implications those cases would have on the issue of patent ownership in the present actions." *Id.* The court attributed any prejudice from the stay to the plaintiff's own actions, because "knowing of the allegations against them in California, [plaintiffs] chose to file the present actions (and continue to file additional actions on this group of patents)." *Id.* Here, reexamination proceedings at the PTO are of course different from proceedings in this Court, but Wonderland filed its complaint in this venue with full knowledge of Thorley's already-initiated *inter partes* reexamination of the '609 Patent and the possibility of a stay pending the results of that reexamination.

The Court also notes that this case is not the only ongoing litigation between Wonderland and Thorley. (Docket No. 211 at 2). In addition to the reexamination proceedings before the PTO, the parties in this case have engaged in other litigation in this District Court before the Honorable Mark Hornak at Civil Action 13-387, (Docket No. 183 at 2), as well as in Germany, (Docket No. 196 at 2). Ultimately, the proceedings in this case could have an impact on all of

these other matters.[10]  Additionally, both parties can now avoid the expenses of this trial, any post-trial motions practice, and any appeal to the Federal Circuit in this matter while the *inter partes* reexamination continues and this case remains stayed.  *See In re Bear Creek Technologies Inc.*, MDL No. 12-2344, 2013 WL 3789471, *3 n.8 (D. Del. July 17, 2013) ("[A] stay will foster issue simplification and 'maximize the likelihood that neither the [c]ourt nor the parties expend their assets addressing invalid claims.'").

Therefore, the Court finds that the first factor weighs in favor of a stay at this time.

## B.      Simplification of Issues for Trial

This second factor also weighs in favor of a stay.  Because Wonderland has stipulated to non-infringement of claim 3 of the '609 Patent, (Docket No. 66), and the Court granted summary judgment of non-infringement of claims 12-14, *see Wonderland NurseryGoods Co.*, 2013 WL 6731899, at *1, there are only <u>two</u> claims remaining at issue in this case, namely, claims 19 and 20.  Both claims are under reexamination, and the grant of a stay in this case pending the final results of reexamination proceedings would eliminate or minimize several complex issues currently before the Court, because "[w]hen a claim is determined to be invalid in reexamination, the reexamination statute requires the Director of the PTO to cancel a claim that is 'finally determined to be unpatentable.'"  *See Fresenius USA, Inc.*, 721 F.3d at 1339.  "[U]nder either the reissue or reexamination statute, if the PTO confirms the original claim in identical form, a suit

---

[10] As the parties are aware, alternative dispute resolution (ADR) is mandatory in the Western District of Pennsylvania.  (*See* Docket No. 25); *see also* LOCAL CIVIL RULES OF COURT 16.2, U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA (Eff. Feb. 1, 2013), *available at* http://www.pawd.uscourts.gov/Documents/Forms/lrmanual.pdf.  As a consequence of the discovery and pretrial preparation in this case, as well as the parallel case before Judge Hornak at Civil Action 13-387, Thorley proposed opening a dialogue for the global resolution of all litigation between the parties at the January 27, 2014 Motion Hearing.  (Docket No. 228).  The Court also proposed to the parties a joint Court-Annexed mediation with Judge Fischer and Judge Hornak, to which Thorley was agreeable and which Wonderland agreed to consider.  *Id.* However, in the Court-ordered status report on mediation, Wonderland indicated that it prefers to use a third-party mediator (either a magistrate judge or private mediator).  (Docket No. 233).

based on that claim may continue, but if the original claim is cancelled or amended to cure invalidity, the patentee's cause of action is extinguished and the suit fails." *Id.* at 1340.

At the time of the Court's initial ruling on the stay, Wonderland asserted claims 3 and 14 against Thorley, but now, these claims are no longer at issue due to Wonderland's stipulation as to claim 3, (Docket No. 66), and this Court's grant of summary judgment of non-infringement of claims 12-14, *see Wonderland NurseryGoods Co.*, 2013 WL 6731899, at *1. This case now involves only two claims, both of which are subject to reexamination. If these claims are either canceled or amended by the Director of the PTO, Wonderland's "cause of action is extinguished and the suit fails." *See Fresenius USA, Inc.*, 721 F.3d at 1340. ("Likewise, in a stayed infringement proceeding, if the [patentee's] claims were canceled in the reexamination, [it] would eliminate the need to try the infringement issue." (internal quotation marks omitted)).

Even if claims 19 and 20 are eventually affirmed as valid by the Director of the PTO, several complex issues before the Court would be greatly streamlined for a subsequent jury trial. These questions concern the admissibility of large sections of the prosecution history of the '609 patent; the admissibility of the Right of Appeal Notice; and the effect, if any, on the Proposed Jury Instructions in this case, of a final office action on the presumption of validity for the '609 Patent, and the burden of proof for demonstrating invalidity of that patent by clear and convincing evidence.[11] Should claims 19 and 20 be affirmed, the issue of the admissibility of the

_____

[11] In the Proposed Jury Instructions filed at Docket No. 186, the parties cited several sets of model patent jury instructions. Wonderland relied on the *2012 AIPLA Model Patent Jury Instructions* for the following language: "A patent is presumed to be valid. In other words, it is presumed to have been properly granted. But that presumption of validity can be overcome if clear and convincing evidence is presented that proves the patent is invalid." (Docket No. 186-1 at 3). Thorley did not agree to this language, and did not cite any model jury instructions for its position. *Id.* Because the Court's Pretrial Order, (Docket No. 63), requires that the parties meet and confer and provide a unified set of proposed jury instructions, and the parties could not agree on this material issue, the Court undertook a review of statutory authority and case law to determine the necessity of the aforementioned jury instruction. The Court found that the statutory text and case law do not provide authority for lowering the burden of proof for proving invalidity of an issued patent based on a final office action by the PTO. *See infra* § IV.B.2; *see also* 35 U.S.C. § 318(b) (providing that the Director of the PTO must cancel a patent after the Patent Trial and Appeal Board

prosecution history and the Right of Appeal Notice would become moot. Similarly, the debate whether the '609 Patent still enjoys a presumption of validity requiring clear and convincing evidence of invalidity would be definitively resolved by the PTO's certificate affirming, amending, or canceling the claims at issue. *See Fresenius USA, Inc.*, 721 F.3d at 1339-40.

### 1. Admissibility of Reexam Documents

Turning first to the Reexam Documents, there does not seem to be any controlling Federal Circuit law on the admissibility of reexamination evidence given a final office action. *See K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1376 (Fed. Cir. 2012) (noting that "[i]t is generally true that evidence of non-final reexamination determinations is of little relevance and presents a risk of jury confusion," but also finding that "it is the province of the district court to weigh those interests and determine admissibility in each case, a decision about which the court has very broad discretion") (applying Tenth Circuit law); *SK Hynix Inc. v. Rambus Inc.*, Civ. No. 00-20905, 2013 WL 1915865, *14 (N.D. Cal. May 8, 2013) ("The reexamination decisions finding the Four Claims to be invalid may have been admissible and may have affected the jury's finding of validity with respect to those claims." (citing *Oracle America, Inc. v. Google, Inc.*, Civ. No. 10-03561, 2012 WL 1189898, *3 (N.D. Cal. Jan. 4, 2012)).

The Court recognizes that in *Oracle America, Inc. v. Google, Inc.*, Judge Alsup ruled that "[s]ubject to the rules of evidence, the parties will be permitted to introduce the office actions on reexamination" for three patents that had been subject to final office actions from the PTO. *See* Civ. No. 10-03561, 2012 WL 1189898, *3 (N.D. Cal. Jan. 4, 2012). Yet, *Oracle* is not controlling and may be distinguishable because it involved seven asserted patents and a claim for

---

issues a written decision concerning the patentability of any claims of a patent under reexamination and the time for appeal has expired); *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 644-45 (Fed. Cir. 2011) (holding that "reexamination is not final prior to the exhaustion of all appeal rights," including any appeals to the Federal Circuit).

willful infringement that could be rebutted by the reexamination results. *See id.* at *1, 3. Further, Judge Alsup's ruling issued more than ten weeks before the earliest trial date in that case, and more than four months before the actual May 7, 2012 trial date for the patent phase of the case, *see Oracle Am., Inc.*, Civ. No. 10-03561, (Docket Nos. 675, 676, 1072, 1089, 1090). The plaintiff also filed its motion in limine on October 7, 2011, seven months before the actual trial date, *see Oracle Am., Inc.*, Civ. No. 10-03561, (Docket Nos. 501, 675, 1072), and elected to proceed to trial with its other patents that were not subject to a final office action from the PTO, *see Oracle Am., Inc.*, Civ. No. 10-03561, (Docket Nos. 777, 1211). This timeframe provided the parties in *Oracle* with sufficient time to update their invalidity contentions and any expert reports on invalidity prior to trial. *See Oracle Am., Inc.*, 2012 WL 1189898, at *3.

Here, by contrast, Wonderland has not claimed willful infringement and has no interest in foregoing its only asserted patent claim. (Docket No. 220 at 7). Unlike *Oracle*, where the parties raised the issue of reexamination evidence seven months before the actual trial date, here Wonderland raised this issue for the first time in its Motion in Limine dated December 27, 2013, (Docket No. 162), one month before the date of jury selection and trial.[12] (Docket No. 63). Briefing was completed by Friday, January 24, 2014.[13] (Docket Nos. 178, 179, 194, 213, 224). Furthermore, counsel for Wonderland appeared unfamiliar with *Oracle* as late as the Final

---

[12] The Court is mindful that it had convened status conferences both prior to and after circulating the Pretrial Order containing the pretrial deadlines, (Docket No. 63), to counsel for both parties, (Docket Nos. 60, 62). Both parties' counsel "stated they had no objections to the draft pretrial order." (Docket No. 62). The Court also advised counsel that "any problems or issues arising in the future, should be brought promptly to the attention of the Court by motion, email, or phone call." *Id.* To that end, counsel informed the Court that Thorley's Motion to Exclude Wonderland's Amended Infringement Contentions, (Docket No. 176), required early resolution. In response, the Court scheduled an early motion hearing on January 16, 2014, (Docket No. 199), and issued a Memorandum Opinion granting Thorley's Motion on January 17, 2014, *Wonderland NurseryGoods Co.*, 2014 WL 199789, at *1.

[13] Wonderland filed its initial Motion in Limine on December 27, 2013, (Docket No. 162), but it failed to meet and confer with opposing counsel until January 2, 2014, (Docket Nos. 170, 172), as is required by § II.N of this Court's PRACTICES AND PROCEDURES ("[A]ll discovery motions and motions in limine must be accompanied by a certificate of conferral as set forth in Local Rules 16.1.C.4, 37.1 and 37.2."). After Wonderland filed its Motion in Limine with the proper certificate of conferral on January 6, 2014, (Docket No. 178), Thorley filed its Response on January 9, 2014, (Docket No. 194), Wonderland filed its Reply on January 23, 2014, (Docket No. 213), and Thorley filed its Sur-Reply on January 24, 2014, (Docket No. 224).

Pretrial Conference on January 21, 2014, (Final Pretrial Tr. 23:25-24:19), in spite of Thorley's reliance on *Oracle* throughout its Response, (Docket No. 194). Instead, Wonderland first addressed *Oracle* in its Motion for Leave to File a Reply on January 22, 2014, (Docket No. 209-2), and the Court heard additional argument on the import of reexamination on January 27, 2014, the morning of trial, at the request of Wonderland, (CM/ECF Text Order dated Jan. 24, 2014).

It also bears repeating that Judge Alsup did not rule that the reexamination evidence was admissible *per se*, but only that the parties may introduce the office actions subject to the rules of evidence.[14] *Oracle Am., Inc.*, 2012 WL 1189898, at *3, 5 ("Any denial above does not mean that the evidence at issue in the motion is admitted into evidence—it must still be moved into evidence, subject to other possible objections, at trial."). Accordingly, the Court now turns to a discussion of potentially applicable evidentiary rules, namely, hearsay and unfair prejudice.

"Evidentiary rulings do not generally raise issues unique to patent law," and this Court "applies the law of the appropriate regional circuit," i.e., the Third Circuit. *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 994 (Fed. Cir. 2007). Pursuant to Rule 401, courts are instructed generally to admit all evidence having "any tendency" to make the existence of a material fact "more probable or less probable than it would be without the evidence." FED. R. EVID. 401; *United States v. Friedman*, 658 F.3d 342, 355 (3d Cir. 2011); *Moyer v. United Dominion Industries, Inc.*, 473 F.3d 532 (3d Cir. 2007) (quoting *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 232 (3d Cir. 2004) ("The definition of relevant evidence is very broad and does not raise a high standard.")). Based on the nature of the proffered evidence, one could certainly maintain the relevance of the Reexam Documents to the claims before this Court.

---

[14] The Federal Circuit is also unlikely to address the issue of the admissibility of reexamination evidence in Oracle's appeal, *see Oracle Am., Inc.*, Civ. No. 10-03561, (Docket Nos. 1243, 1248), because of Oracle's strategy to withdraw with prejudice all of the patents that were subject to a final office action, to avoid a stay of the entire case until after the final decision by the PTO on administrative appeal, *see Oracle Am., Inc.*, Civ. No. 10-03561, (Docket Nos. 757, 777, 1211).

Relevant evidence, however, may be excluded if it contains hearsay. *See* Fed. R. Evid. 802. Relevant evidence may also be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403; *see Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 386 F. App'x 214, 218 (3d Cir. 2010) ("A district court is accorded wide discretion in determining the admissibility of evidence under the Federal Rules."). Given the nature of the proposed evidence of reexamination, all of which can be considered hearsay, the Court will initially address hearsay and certain of its exceptions.

### a. Hearsay

Evidence that is hearsay is generally not admissible. Fed. R. Evid. 802; *see also United States v. Casoni*, 950 F.2d 893, 903 (3d Cir. 1991) ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." (quoting Fed. R. Evid. 802)). "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Casoni*, 950 F.2d at 903 (quoting Fed. R. Evid. 801(c)). "Hearsay is generally inadmissible because the statement is inherently untrustworthy: the declarant may not have been under oath at the time of the statement, his or her credibility cannot be evaluated at trial, and he or she cannot be cross-examined." *Ezeagwuna v. Ashcroft*, 325 F.3d 396, 406 (3d Cir. 2003); *see also United States v. Console*, 13 F.3d 641, 656 (3d Cir. 1993).

During argument at the Final Pretrial Conference, counsel for Wonderland recognized the issue of hearsay when he asserted that the Reexam Documents should not be admissible:

> I can't cross-examine the examiner here. I can't get him on the stand and say, well, gee, Mr. Examiner, isn't it true that X and Y, or isn't it true that this has nothing to do with infant rocking? So, I

think it's unfair to get his opinion in this case without any possibility of me cross-examining him.

Final Pretrial Conf. Tr. 20:19-24. In response, Thorley maintained that counsel for Wonderland also could not cross-examine the Judge or the jury in this case. *Id.* at 21:13-17.

Thorley's Response, however, misses the mark, as hearsay is "inherently untrustworthy" precisely because "the declarant … cannot be cross-examined." *See Ezeagwuna*, 325 F.3d at 406. To that end, the Reexam Documents contain hearsay to the extent that they contain the out of court written statements of the PTO examiner offered for the truth of the matter contained therein, i.e., the '609 Patent is not valid. *See* FED. R. EVID. 801(c). They may also contain multiple levels of hearsay to the extent that the examiner relied on written and oral information provided by attorneys to the examiner during the reexamination proceeding.[15] *See United States v. Lloyd*, 566 F.3d 341, 346 (3d Cir. 2009) ("First and foremost, the documents contain multiple levels of hearsay. The warrant petition was based on a violation report written by a non-testifying probation officer who relied (ostensibly) on information provided by unidentified officers of the Duval County Sheriff's office, who (apparently) interviewed Lloyd's ex-girlfriend.").

Counsel for Wonderland, moreover, cannot cross-examine the PTO examiner on his factual findings.[16] *See* MPEP § 1701.01 (8th ED. REV. Aug. 9, 2012). The Federal Circuit has

---

[15] *See, e.g.*, Right of Appeal Notice, (Docket No. 209-3 at *passim*).

[16] Under the latest Revision of the Manual of Patent Examining Procedure (MPEP), it sets forth that:

> It is the policy of the United States Patent and Trademark Office (USPTO) that its employees, including patent examiners, will not appear as witnesses or give testimony in legal proceedings, except under the conditions specified in 37 CFR Part 104, Subpart C. > The definitions set forth in 37 CFR 104.1 and the exceptions in 37 CFR 104.21 are applicable to this section. < Any employee who testifies contrary to this policy will be dismissed or removed.

MPEP § 1701.01 (8th ED. REV. Aug. 9, 2012). Federal Circuit law provides: "The Guidelines, like the Manual of Patent Examining Procedure ('MPEP'), are not binding on this court, but may be given judicial notice to the extent they do not conflict with the statute." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 964 (Fed. Cir. 2002).

Title 37, Part 104, Subpart C of the Code of Federal Regulations provides,

held that deposing a PTO examiner could be "disruptive of the decisionmaking process and thereby interfere with the PTO's administrative functions." *W. Elec. Co., Inc. v. Piezo Tech., Inc.*, 860 F.2d 428, 432-33 (Fed. Cir. 1988). "By asking these questions in anticipation that the examiner does not know the answers or is not fully conversant with the technical area, a party could attempt to discredit the examiner and ease its burden of persuasion." *Id.* at 433. Because "[p]atent examiners are quasi-judicial officials," the Federal Circuit held that "[i]t is no more appropriate to question a patent examiner's technical expertise than it is to question the quality of a judge's law school education or judicial experience." *Id.* (citing *United States v. Morgan*, 313 U.S. 409, 422 (1941)); *see also Butterworth v. United States*, 112 U.S. 50, 67 (1884) ("That it was intended that the commissioner of patents, in issuing or withholding patents, in reissues, interferences, and extensions, should exercise quasi judicial functions, is apparent from the nature of the examinations and decisions he is required to make."); ROBERT L. HARMON, CYNTHIA A. HOMAN & CHARLES M. MCMAHON, PATENTS AND THE FEDERAL CIRCUIT 1034-35 (11th ED. 2013) ("*United States v. Morgan* permits an official exercising a quasi-judicial

---

An employee may not give testimony, produce documents, or answer inquiries from a person not employed by the Office regarding testimony or documents subject to a demand or a potential demand under the provisions of this subpart without the approval of the General Counsel. The General Counsel may authorize the provision of certified copies not otherwise available under Part 1 of this title subject to payment of applicable fees under § 1.19.

….

Except when the United States is a party, every demand shall be accompanied by an affidavit or declaration under 28 U.S.C. 1746 or 35 U.S.C. 25(b) setting forth the title of the legal proceeding, the forum, the requesting party's interest in the legal proceeding, the reason for the demand, a showing that the desired testimony or document is not reasonably available from any other source, and, if testimony is requested, the intended use of the testimony, a general summary of the desired testimony, and a showing that no document could be provided and used in lieu of testimony.

37 C.F.R. § 104.22. To that end, the Court finds that it is unlikely that an examiner from the PTO would be able to testify before this Court in a jury trial concerning his factual findings contained within the Reexam Documents. *See id.* (providing that an examiner "may not give testimony, produce documents, or answer inquiries from a person not employed by the Office … without the approval of the General Counsel.").

function to testify as to relevant matters of fact so long as the factual inquiries do not probe into the mental processes employed by the official in formulating the decision in question.").

The Reexam Documents would thus appear to be inadmissible evidence, just as this Court's Memorandum Opinion on summary judgment, *Wonderland NurseryGoods Co.*, 2013 WL 6731899, at *1, or another judge's opinion in a case involving the same patent or accused device might not be admissible. In *Oracle*, as noted, Judge Alsup did not rule that the reexamination evidence was admissible in evidence *per se*, but only that the parties *may introduce* the office actions *subject to the rules of evidence*. *See Oracle Am., Inc.*, 2012 WL 1189898, at *3. They "must still be moved into evidence, subject to other possible objections, at trial." *See id.* at *5.

### b. Hearsay Exceptions

There are of course exceptions to the rule against hearsay, such as for business records:

> The business record exception to the hearsay rule requires that the witness who lays the foundation for the admission of the evidence [must] testify that: (1) the declarant in the records had knowledge to make accurate statements; (2) that the declarant recorded the statements contemporaneously with the actions which were the subject of the reports; (3) that the declarant made the record in the regular course of the business activity; and (4) that such records were regularly kept by the business.

*Casoni*, 950 F.2d at 909. There is also the public records exception, which covers:

> A record or statement of a public office if: (A) it sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and (B) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8); *see also Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1342 (3d Cir. 2002) (discussing seven factors in determining the admissibility of evaluative reports under Rule

803(8)). Accordingly, the Court must determine if any exception to the rule against hearsay applies, thereby permitting the Reexam Documents to be entered in evidence.

As an initial matter, before an exhibit can be admitted in evidence, the proponent of the exhibit must make a proffer and properly support its motion. *See Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 802 (10th Cir. 2001) ("[T]he proponent of the excluded evidence must explain what he expects the evidence to show and the grounds for which he believes the evidence is admissible."). Here, Thorley has made no proffer as to why the Reexam Documents should be admissible based on a hearsay exception. (Docket Nos. 194, 217, 219 and 224).

Notwithstanding Thorley's failure to proffer any hearsay exception, the Reexam Documents would not qualify under the business records exception, because Thorley has not proffered the testimony of any custodian or other qualified witness, (Docket Nos. 185, 217, 228), to establish that the Reexam Documents are records "kept in the course of a regularly conducted activity," *see* FED. R. EVID. 803(6). In *Shu-Hui Chen v. Bouchard*, the Federal Circuit held that "[b]ecause Chen presented no testimony from the 'custodian or other qualified witness' that Wei's notebooks were 'records of regularly conducted activity,' relying instead only on Chen's uncorroborated testimony, the Board properly concluded that those notebooks did not fall within the purview of the exception." *Shu-Hui Chen v. Bouchard*, 347 F.3d 1299, 1308 (Fed. Cir. 2003). Under Third Circuit law, a qualified witness is interpreted broadly: "to be qualified, a witness only needs to 'have familiarity with the record-keeping system' or 'understand[] the system.'" *United States v. Muhammad*, 512 F. App'x 154, 159-60 (3d Cir. 2013) (quoting *United States v. Console*, 13 F.3d 641, 657 (3d Cir. 1993)), *cert. denied*, 133 S. Ct. 2783 (2013), *and cert. denied*, 133 S. Ct. 2785 (U.S. 2013); *see also United States v. Furst*, 886 F.2d 558, 572 n.18 (3d Cir. 1989) (recognizing that "the issue is whether the witness, whether inside[] or

outside [the business], has sufficient personal knowledge from which to testify to the elements required to establish the foundation"). However, "[w]hile a noncustodial witness such as a government agent, or even documentary evidence, may be used to lay the foundation required by Rule 803(6), that witness or those documents must still demonstrate that the records were made contemporaneously with the act the documents purport to record by someone with knowledge of the subject matter, that they were made in the regular course of business, and that such records were regularly kept by the business." *United States v. Pelullo*, 964 F.2d 193, 201 (3d Cir. 1992).

Here, Counsel for Thorley asserted at oral argument during the January 27, 2014 Motion Hearing that "any fact witness" may introduce the "fact of the reexamination being filed and the fact that it has been granted and the fact that those claims stand rejected." (Docket No. 228). Under *Shu-Hui Chen*, 347 F.3d at 1308, however, Rule 803(6) requires more than just "any fact witness" to establish that the Reexam Documents are "records of regularly conducted activity."

Moreover, pursuant to the Court's Pretrial Order, "[f]or each witness listed, Defendant shall provide an offer of proof explaining the substance of the witness' testimony." (Docket No. 63 at 2). Thorley did not proffer a witness to go through the Reexam Documents with the jury and explain the relevance of each portion of those documents to the issues in the instant case. (Docket No. 185). Nor did Thorley proffer any witness to testify concerning the reexamination of the '609 Patent as a general matter, other than Mr. Daley.[17] (Docket No. 185 at 1-2). In its proffer for Mr. Daley, Thorley indicated that he would "discuss and authenticate documents related to the marketing, sales, revenue and profit associated with the mamaRoo." *Id.* It thus appears that Mr. Daley would not be authenticating the Reexam Documents, as he cannot attest to the "foundational requirements of Rule 803(6)," *see Console*, 13 F.3d at 657, and he is only

---

[17] Robert Daley is the CEO and co-founder of Thorley Industries, LLC. (Docket No. 185 at 1). He is a named inventor on several Thorley patents, including four patents that were the subject of Wonderland's Motion in Limine concerning Patents Granted to Thorley. *See Wonderland NurseryGoods Co.*, 2014 WL 241751, at *1.

attesting to "Thorley's relationship with Wonderland and Thorley's knowledge of the '609 patent, including the reexamination requested by Thorley." (Docket No. 185 at 1-2).

Nevertheless, as this Court previously held, "[t]o the extent that Wonderland intends to question Mr. Daley as to Thorley's knowledge of the '609 Patent, the Court further finds the same to be not relevant to the issue of infringement of the patent." *See Wonderland NurseryGoods Co.*, 2014 WL 289446, at *2 (footnotes omitted). "As both parties have acknowledged, Wonderland does not seek a finding of willful infringement, in which knowledge of the '609 Patent prior to the lawsuit could become relevant." *See id.* To that end, this Court held that "neither Wonderland nor Thorley and their respective counsel shall make reference to any other litigation or disputes between them during the trial." *Id.* at *3. Thorley, therefore, proffered Mr. Daley not to authenticate the Reexam Documents, but only to reference the reexamination as it related to Thorley's knowledge of the '609 Patent, (Docket No. 196), an issue that is not relevant to this case, *see Wonderland NurseryGoods Co.*, 2014 WL 289446, at *3.

Alternatively, the Reexam Documents could qualify under the public records exception based on the PTO's activities as an agency. *See IA Labs CA, LLC v. Nintendo Co.*, 857 F. Supp. 2d 550, 552 (D. Md. 2012) ("Although the Court need not decide the question of hearsay, the Court recognizes that documents created in the course of the reexamination proceedings may well fall within the exception to hearsay for public records."); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, Civ. No. 03-1431, 2006 WL 1330003, *3 (N.D. Cal. May 15, 2006) ("As Fresenius points out, Baxter does not cite a single case in support of its Motion where a court has excluded PTO documents as inadmissible hearsay. To the contrary, courts regularly consider such documents when construing claims for the purposes of infringement and validity analyses."). In a similar case involving National Transportation Safety Board Reports, however,

the Third Circuit held that "[t]he Advisory Committee's Notes make clear that Federal Rule of Evidence 803(8) exempts from the hearsay rule only reports by officials; and of course the pilots and other witnesses are not officials for this purpose." *John McShain, Inc. v. Cessna Aircraft Co.*, 563 F.2d 632, 636 (3d Cir. 1977) (holding that the "reception of such reports into evidence would have involved a lengthy attempt to sift out admissible hearsay, as well as an inquiry into the 'circumstances bearing on the trustworthiness' of the investigators' conclusions"). To that end, the extensive discussion contained within the Reexam Documents of attorney positions and arguments, on the extent to which various limitations of the claims of the '609 Patent are met by prior art references, *see* Right of Appeal Notice, (Docket No. 209-3 at *passim*), would certainly not qualify under the exception for public records, *see John McShain, Inc.*, 563 F.2d at 636.

Counsel for Wonderland also raised the possible application of Rule 901[18] during the January 27, 2014 Motion Hearing. FED. R. EVID. 901(a). Under Rule 901, the proponent of a trial exhibit "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Id.* One method of authentication is to demonstrate that the trial exhibit "was recorded or filed in a public office as authorized by law." FED. R. EVID. 901(b)(7). But, to the extent that Thorley intends to rely on Rule 901(b)(7) for authentication, Thorley has made no proffer to that end, as is required by the Court's Pretrial Order, (Docket No. 63), because Thorley proffered no witness to authenticate the Reexam Documents. A second method of authentication is to rely on self-authenticating exhibits under Rule 902. FED. R. EVID. 902. Yet, Thorley has

---

[18] To the extent that Thorley contends that the authenticity of the prosecution history is no more in dispute than the authenticity of the '609 Patent, (Docket No. 228), the Court has encouraged the parties to reach a stipulation of fact concerning the Reexam Documents, as they had achieved for "[t]he date of issuance of US Patent 8,047,609 (the '609 patent) and the other information on the front page of the '609 patent, including ownership." (Docket No. 205). As of the writing of this Memorandum Opinion, however, no such stipulation has been reached, despite the efforts of this Court and the parties. *See* Motion Hearing Tr. 42:12-22 (Jan. 27, 2014).

listed no records custodian to certify as correct "a copy of a document that was recorded or filed in a public office as authorized by law," as Rule 902(4) requires for self-authentication. *See id.*

To be sure, it is true that facts and data "need not be admissible" in evidence for experts to rely on those facts in forming an opinion, if experts "in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." FED. R. EVID. 703. Thorley, however, asserts that its expert, Dr. Clark,[19] "(i) does not and will not render an opinion concerning the reexamination, (ii) Dr. Clark does not rely on the reexamination as a basis in forming his opinions regarding invalidity, and (iii) recent events in the reexamination did not cause Dr. Clark to alter his opinions." (Docket No. 224 at 2).

For all of the above reasons, the Court does not find a properly supported exception to the hearsay rule, which would permit the Reexam Documents to be admitted in evidence at this time. Hence, this Court turns to the potential for judicial notice for completeness.

### c. Judicial Notice

The Court notes that it may still take judicial notice of the results of the reexamination, even if the Reexam Documents themselves are not admissible in evidence. *See Standard Havens Products, Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 (Fed. Cir. 1990) ("Although we do not rely on it, we take judicial notice of the 'adjudicative fact' of the January 8, 1990, first office action on reexamination, rejecting the Hawkins claims. Gencor submitted a copy of the first office action to this court with a letter dated January 19, 1990; thus, the office action is now part of the record in this motion."); *see also* 37 C.F.R. § 1.11(d) (1989) ("All papers or copies thereof relating to a reexamination proceeding which have been entered of record in the patent or reexamination file are open to inspection by the general public...."); HARMON, HOMAN, AND

---

[19] Dr. Clark is a Professor of Mechanical Engineering and Materials Science in the Swanson School of Engineering at the University of Pittsburgh. Clark Rep. at 3, (Docket No. 138-1 at 4). Relative to his opinion, see the Court's Memorandum Opinion at Docket No. 157, *Wonderland NurseryGoods Co.*, 2013 WL 6731899, at *6, 9, 13.

MᴄMᴀʜᴏɴ at 1062-63.  Judicial notice, however, would not make the Reexam Documents admissible; it would only instruct the jury of the fact that the '609 Patent is under reexamination or has been subject to a final office action, *see* Fᴇᴅ. R. Eᴠɪᴅ. 201, in the same way that a joint stipulation would instruct the jury of these facts.  *See* Final Pretrial Conf. Tr. 24:20-24.

Federal Rule of Evidence 201, which covers judicial notice of adjudicative facts, sets forth that "[i]n a civil case, the court must instruct the jury to accept the noticed fact as conclusive."  Fᴇᴅ. R. Eᴠɪᴅ. 201.  Adjudicative facts are ones that are "not subject to reasonable dispute" because they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[20]  *Id.*  Judicial notice, therefore, cannot make the breadth of the Reexam Documents admissible in evidence, because they contain numerous factual statements and arguments by attorneys, *see* Right of Appeal Notice, (Docket No. 209-3 at *passim*), which are not "generally known" nor "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See* Fᴇᴅ. R. Eᴠɪᴅ. 201.  Judicial notice of the fact that the '609 Patent has been subject to reexamination, or a final office action, would of course still be subject to balancing under Federal Rule of Evidence 403, *see* § V, *infra*.

The Court now turns to the impact of Rule 403 as it may pertain to the Reexam Documents.

### d.        Unfair Prejudice Under Rule 403

Even if the Reexam Documents were admissible in evidence despite the general rule against hearsay, or the fact of reexamination or a final office action were admissible based on judicial notice, the Court must still conduct a balancing test under Rule 403 to determine if the probative value of the reexamination evidence is substantially outweighed by the danger of

---

[20] Legislative facts, by contrast, are "established truths, facts or pronouncements that do not change from case to case but apply universally."  *United States v. Gould*, 536 F.2d 216 (8th Cir. 1976).

unfair prejudice, confusion of the issues, misleading the jury, and undue delay under Rule 403, all of which would be in opposition to Federal Rule of Civil Procedure 1.[21]  *See Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1343 (Fed. Cir. 2009) ("The district court did not abuse its discretion in concluding that the prejudicial nature of evidence concerning the ongoing parallel re-examination proceeding outweighed whatever marginal probative or corrective value it might have had."); *see also IA Labs CA, LLC v. Nintendo Co.*, 857 F. Supp. 2d at 552 ("As for the probative value and potential prejudice of the reexamination proceedings, the Court agrees with the vast majority of courts that such evidence has 'little relevance to the jury's independent deliberations on the factual issues underlying the question of obviousness' and that 'risk of jury confusion' is 'high.'" (quoting *Callaway Golf Co.*, 576 F.3d at 1343)).

The Court finds several reasons why the Reexam Documents should be excluded under Rule 403.  First, the Reexam Documents apply a completely different claim construction to the claims of the '609 Patent from the one applied by the Court.  The PTO examiner, for instance, determined that the term "infant rocking chair" is not limiting, *see* Right of Appeal Notice, (Docket No. 209-3 at 19, 34, 38, 47-51), whereas this Court has construed the same as limiting in its Memorandum Opinion on Claim Construction, *see Wonderland NurseryGoods Co.*, 2013 WL 141546, at *6.  It is hard to believe that a juror will be able to evaluate independently the validity of the '609 Patent after reviewing an "official" document from a PTO examiner declaring the '609 Patent to be invalid under a different claim construction from the one adopted by this Court.

---

[21] Under Rule 1, "all civil actions and proceedings in the United States District Courts … should be construed and administered to secure the just, speedy, and inexpensive determination of every action."  FED. R. CIV. P. 1.  The Court also notes that the "[t]he mission of the United States District Court for the Western District of Pennsylvania is to preserve and enhance the rule of law while providing an impartial and accessible forum for the just, timely and economical resolution of legal proceedings within the court's jurisdiction, so as to protect individual rights and liberties, promote public trust and confidence in the judicial system, and to maintain judicial independence."  *See* UNITED STATES DISTRICT COURT: WESTERN DISTRICT OF PENNSYLVANIA, *available at* http://www.pawd.uscourts.gov/.

The Right of Appeal Notice, for example, states several times that Nordella[22] contains an infant rocking chair, *see* Right of Appeal Notice, (Docket No. 209-3 at 19, 34, 38, 47-51), despite this Court's Memorandum Opinion that this issue should be properly reserved for the jury to determine in the first instance, *see Wonderland NurseryGoods Co.*, 2013 WL 6731899, at *6-7.

The Court also understands that the expert reports of Mr. Drobinski and Dr. Clark will not be admitted in evidence,[23] further making the admission of the Reexam Documents unfairly prejudicial to Wonderland. Nor will the Court's Memorandum Opinion on the parties' Cross-Motions for Summary Judgment, *Wonderland NurseryGoods Co.*, 2013 WL 6731899, at *5-14, be admitted. By the same token, given that the Court's Memorandum Opinion on Claim Construction,[24] *Wonderland NurseryGoods Co.*, 2013 WL 141546, at *6, will not be admitted in evidence, (Docket No. 221), the admission of the Reexam Documents would be very confusing to the jury and distract them from their duty to follow the Court's Claim Construction.

Second, the Reexam Documents contain several citations to U.S. statutes, the federal regulations, the Manual of Patent Examining Procedure ("MPEP"), and judicial opinions, without any accompanying explanation by this Court. *See, e.g.*, Right of Appeal Notice, (Docket No. 209-3 at 5-6, 8-14, 17, 19, 24, 27-29, 34, 77, 106, 107). These citations to legal authorities would be confusing to the jury and distract them from the other factual materials in evidence.

---

[22] Nordella is a prior art reference discussed in detail within the Right of Appeal Notice. For additional information on the features of Nordella, see the Court's Memorandum Opinion at Docket No. 157, *Wonderland NurseryGoods Co.*, 2013 WL 6731899, at *5-14.

[23] The Court notes that, in general, "Rule 702 permits the admission of expert opinion testimony not opinions contained in documents prepared out of court." *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994); *see also Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261-62 (9th Cir. 1984) ("Rule 703 merely permits such hearsay, or other inadmissible evidence, upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion. It does not allow the admission of the reports to establish the truth of what they assert." (footnotes and citations omitted)); *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir.1983) ("An expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion, Fed. R. Evid. 703, but not as general proof of the truth of the underlying matter, Fed. R. Evid. 802.").

[24] Although the jurors will not see the Court's Memorandum Opinion on Claim Construction, they will see the Court's Claim Construction in the Proposed Juror Notebooks, as well as in the jury instructions. (Docket No. 221).

Third, they discuss in detail several prior art references that ultimately may not be admitted in evidence or be relevant to the claims at issue here. *See, e.g.*, *id.* at *passim*.

Fourth, they contain extensive discussion of other claims besides claims 19 and 20 of the '609 Patent. *See, e.g.*, *id.* These other claims are not at issue here. Not only is the discussion of claims other than claims 19 and 20 irrelevant, but it is also prejudicial to both parties.

Fifth, they contain not only the factual findings, but also 148 pages of legal analysis and legal reasoning, as well as the legal conclusions of the PTO, absent any accompanying explanation by the Court, which seems unfairly prejudicial to Wonderland.[25] *See, e.g.*, *id.*

Sixth, they contain extensive discussion of numerous attorney positions and arguments on the extent to which various limitations of the claims of the '609 Patent are met by prior art references, which cannot be admissible under this Court's interpretation of the evidentiary rules. *See, e.g.*, *id.* Despite these repeated instances of confusing, misleading, non-relevant, and prejudicial pieces of information contained within the 148 pages of technical and legal material in the Reexam Documents, Thorley has made no proffer to redact the material or present selected portions to the jury other than through its Motion for Reconsideration. (Docket No. 217).

In sum, the Court's analysis of the rules of evidence counsels the Court to exclude the admission of the Reexam Documents in evidence because the "reception of such reports into evidence would have involved a lengthy attempt to sift out admissible hearsay." *See John McShain, Inc.*, 563 F.2d at 636. The documents also do not contain sufficient indicia of reliability because they form a part of a legal proceeding that is subject to appeal to both the Patent Trial and Appeal Board and the Federal Circuit. *See Fresenius USA, Inc.*, 721 F.3d at 1346. It is only after the resolution of these appeals that the Director of the PTO has the

---

[25] The Court also wonders whether jurors will ask themselves why their time is being spent in trial if they are told that the validity of the '609 Patent is being reevaluated by the PTO. This thought process could be more than prejudicial to both parties.

authority to cancel the '609 Patent, making the patent void *ab initio*.[26] *See id.* The Court further finds that the probative value of the documents is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue delay under Rule 403.

Based on the aforementioned reasons, a stay pending the final results of reexamination would eliminate these complex issues concerning the admissibility of the Reexam Documents and streamline the case for trial.

### 2. Objections to the Proposed Jury Instructions

In addition to curing the issues presented by the Reexam Documents, a stay would also eliminate several complex issues concerning the Proposed Jury Instructions. As noted, Thorley requests a jury instruction that the '609 Patent should not be given a presumption of validity or require proof of invalidity by clear and convincing evidence. At the Final Pretrial Conference, Wonderland agreed not to instruct the jury as to the presumption of validity, but maintained that Thorley must prove invalidity by clear and convincing evidence. *See* Final Pretrial Conf. Tr. 16:15-19. Thorley countered that "it would be misleading to the jury to permit Wonderland to make much of the presumption of validity (as Thorley suspects it will) and to instruct the jury on that presumption or Thorley's heightened 'clear and convincing' [evidence] burden, where the PTO has called the validity of the asserted claims into serious doubt." (Docket No. 194 at 3). At the Final Pretrial Conference, Thorley maintained its positions on both the presumption of validity and the clear and convincing evidence standard. *See* Final Pretrial Conf. Tr. 7:7-17.

Thorley's objections to the Proposed Jury Instructions are overruled, given the present record, as Thorley provides no statutory or Federal Circuit authority for lowering the burden of

---

[26] Black's Law Dictionary "defines 'void ab initio' as '[n]ull from the beginning, as from the first moment when a contract is entered into.'" *Stafford v. Crane*, 382 F.3d 1175, 1181 (10th Cir. 2004) (quoting BLACK'S LAW DICTIONARY 1098 (8th Ed. 2004)). For further analysis of the PTO Director's authority to affirm or cancel the validity of the '609 Patent, with the latter making the patent void *ab initio*, *see infra* § IV.B.2.

proof for proving the alleged invalidity of an issued patent.[27]  *See In re Baxter Int'l, Inc.*, 678

F.3d 1357, 1364 (Fed. Cir. 2012) ("[A] challenger that attacks the validity of patent claims in

civil litigation has a statutory burden to prove invalidity by clear and convincing evidence.").

"Where, as here, the patent in suit has been reexamined under 35 U.S.C. §§ 301-307, the

presumption of validity again remains unaltered."  *Kaufman Co., Inc. v. Lantech, Inc.*, 807 F.2d

970, 974 (Fed. Cir. 1986).  "The challenger, as usual, must not only come forward with evidence

of a prima facie case of invalidity but ultimately prove facts, under a clear and convincing

standard, that support a conclusion that the patent is invalid."  *Id.*  "Although this burden remains

on the challenger, it may be more easily met where the challenger produces prior art that is more

pertinent than that considered by the Patent and Trademark Office (PTO)." *Ryco, Inc. v. Ag-Bag

Corp.*, 857 F.2d 1418, 1423 (Fed. Cir. 1988).  Pursuant to 35 U.S.C. § 282,

> A patent shall be presumed valid. Each claim of a patent (whether
> in independent, dependent, or multiple dependent form) shall be
> presumed valid independently of the validity of other claims;
> dependent or multiple dependent claims shall be presumed valid
> even though dependent upon an invalid claim. The burden of
> establishing invalidity of a patent or any claim thereof shall rest on
> the party asserting such invalidity.

35 U.S.C. § 282.

During oral argument at the Final Pretrial Conference, the parties disputed whether the

Right of Appeal Notice constituted a final office action.  (Docket No. 205).  However, the Court

finds that the Right of Appeal Notice is a final office action based on the latest revision of the

MPEP.  *See* MPEP § 2673.02 (8th ED. REV. Aug. 9, 2012).  The MPEP sets forth that "[a] Right

of Appeal Notice (RAN) is a final Office action which presents a final decision to reject the

---

[27] The Court also notes that on January 9, 2014, both parties approved the use of the videotape entitled *A Patent
Process: An Overview for Jurors* (August 2013), published by the Federal Judicial Center in Washington, D.C. for
use within the Preliminary Charge to the Jury.  In the videotape, Judge Jeremy D. Fogel states: "To prove invalidity,
the alleged infringer must persuade you by what is called clear and convincing evidence that the patent is invalid."

claims (i.e., a final decision that the claims are rejected) and/or a final decision favorable to patentability as to the claims (i.e., a final decision not to make a proposed rejection)." *Id.*

Nevertheless, despite the existence of a final office action against the '609 Patent, the Court finds that the patent is not invalid because, as noted, "[w]hen a claim is determined to be invalid in reexamination, the reexamination statute requires the Director of the PTO to cancel a claim that is 'finally determined to be unpatentable.'" *See Fresenius USA, Inc.*, 721 F.3d at 1339. "[U]nder either the reissue or reexamination statute, if the PTO confirms the original claim in identical form, a suit based on that claim may continue, but if the original claim is cancelled or amended to cure invalidity, the patentee's cause of action is extinguished and the suit fails." *Id.* at 1340. Pursuant to 35 U.S.C. § 318, "[i]f an inter partes review is instituted and not dismissed under this chapter, the Patent Trial and Appeal Board shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d)." Section 318(b) then provides:

> If the Patent Trial and Appeal Board issues a final written decision under subsection (a) and the time for appeal has expired or any appeal has terminated, the Director shall issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent by operation of the certificate any new or amended claim determined to be patentable.

35 U.S.C. § 318(b). Therefore, the claims of a patent are not canceled until both: (1) the Patent Trial and Appeal Board issues a final written decision; and (2) the time for appeal has expired or any appeal has terminated, which includes appeals to the Federal Circuit. *See Bettcher Indus., Inc.*, 661 F.3d at 644-45 ("This provision [§ 316] makes no distinction between appeals to the Board and to this court. And reexamination certificates are not issued piecemeal, at intermediate stages of the reexamination proceeding."). This cancellation of the patent "extinguishes the

underlying basis for suits based on the patent." *See Fresenius USA, Inc.*, 721 F.3d at 1344, 1346 ("[I]n 1928, Congress acknowledged that cancelled claims were void *ab initio*.").

Here, although the '609 Patent has been subject to a final office action, both parties have acknowledged that the Patent Trial and Appeal Board has not issued a final written decision. (Docket Nos. 213 at 2; 224 at 4). Even after a final written decision, the '609 patent would not be canceled until "the time for appeal has expired," *see* 35 U.S.C. § 318(b), which includes any appeals to the Federal Circuit, *see Bettcher Indus., Inc.*, 661 F.3d at 644-45.

These circumstances indicate to the Court that: (1) the '609 Patent remains valid at this time despite ongoing reexamination proceedings, (2) the presumption of validity still applies, and (3) Thorley must prove the invalidity of the '609 Patent by clear and convincing evidence. However, the Court also recognizes that this result may seem patently unfair to Thorley because the PTO has already issued a contrary final office action. Under these circumstances, a stay greatly streamlines the issues for the jury trial because a final resolution of the reexamination proceedings would render moot any issue concerning the presumption of validity.

If Thorley is correct that the '609 Patent should be canceled, moving forward with a jury trial at this juncture could create a considerable waste of judicial resources because the patent would be null from the beginning. *See Fresenius USA, Inc.*, 721 F.3d at 1346. But, if Thorley is incorrect and the validity of the patent is affirmed, the Court can set a trial date immediately.[28] All of the Court's pretrial rulings would remain in effect, and the Reexam Documents would remain inadmissible, in addition to contradicting the final result of the reexamination proceeding.

The second factor, therefore, also weighs in favor of granting a stay at this time.

---

[28] As previously noted, the Court well recognizes the implications of the Civil Justice Reform Act of 1990, which requires a semi-annual report of the "names of cases that have not been terminated within three years after filing." 28 U.S.C. § 476 (2006).

## C. Discovery and Trial Date

As for the third factor, i.e., the stage of discovery and trial date, this factor weighs against the grant of a stay, as discovery is complete and this case was on the eve of trial. However, given the lack of agreement on the application of the presumption of validity of the '609 Patent and references to the reexamination of the same, *see* Motion Hearing Tr. (Jan. 27, 2014), the Court found it foreseeable that numerous sidebars and recesses could occur during trial, which might have a significant impact on juror understanding of the issues, *see Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, Civ. No. 09-290, 2013 WL 5332108, *61 (W.D. Pa. Sept. 23, 2013) ("While the Court cannot even begin to calculate the hours it spent on arguments, objections at over 130 sidebars, and motions regarding minutiae, Marvell's proper focus should have been on persuading the jury, if liability were found, that a lower royalty existed." (footnotes omitted)).

Accordingly, the Court "believes reason requires it to stay th[is] case[] so that the substantial cloud of uncertainty can be cleared away." *See Rmail Limited*, Civ. No. 10-258 (Docket No. 563 at 12-13) ("Considering the realities imposed by the co-pending litigations, the Court finds that its limited time and other resources would be better used by delaying trial of these cases as long as they rest upon such unsteady and shifting jurisdictional grounds."). As noted, "Congress has expressly delegated reexamination authority to the PTO under a statute requiring the PTO to cancel rejected claims, and cancellation extinguishes the underlying basis for suits based on the patent." *See Fresenius USA, Inc.*, 721 F.3d at 1344, 1346. If the PTO cancels the claims of the '609 Patent, that cancellation would extinguish the underlying basis for the trial. *See id.* On the other hand, if the trial remains stayed pending the final resolution of reexamination, all of these issues would be resolved regardless of whether the Director of the PTO cancels or affirms the validity of the '609 Patent. The Court notes that the parties have

36

taken depositions of all the fact and expert witnesses expected to testify at trial, which mitigates any prejudice due to the loss of witnesses. As noted, as soon as a final resolution is reached concerning reexamination, including appeals to the Federal Circuit, a new trial date can be set.

Thus, the third factor does not weigh strongly against the grant of a stay, and given that the first two factors weigh in favor of a stay, the Court finds that a stay is warranted in this case to avoid proceeding to trial based on uncertain grounds. *See Rmail Limited*, Civ. No. 10-258 (Docket No. 563 at 10-11) (entering a stay for 90 days to consider the development of a related co-pending California case and to "prevent the risk of proceeding to trial on uncertain grounds").

Based on the foregoing, the Court grants Thorley's renewed Motion to Stay. (Docket No. 219). Moreover, because the trial is stayed until after the final resolution of the *inter partes* reexamination, after which the '609 Patent will be affirmed as valid or canceled by the Director of the PTO, Wonderland's Objections to the Reexam Documents, (Docket No. 173), and Thorley's Objections to the Proposed Jury Instructions, (Docket No. 186), are overruled, as premature, and Thorley's Motion for Reconsideration, (Docket No. 217), is denied, as premature.

## V.    MOTION TO EXCLUDE REFERENCES TO THE REEXAMINATION

Given that Thorley should not introduce the Reexam Documents in evidence and that the presumption of validity of the '609 Patent should still apply if this case were tried at this time, an additional issue concerns whether Thorley should be allowed to make any reference to the reexamination proceedings or the final office action. In *K-TEC, Inc. v. Vita-Mix Corp.*, for instance, the Federal Circuit held that "it was not an abuse of discretion to allow the parties to discuss the extent to which the PTO had considered Ash or instruct the jury that Ash was before the PTO in the reexamination proceedings." *K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1376 (Fed. Cir. 2012) (applying Tenth Circuit law). In *Callaway Golf Co. v. Acushnet Co.*, by

contrast, the Federal Circuit held that "[t]he district court did not abuse its discretion in concluding that the prejudicial nature of evidence concerning the ongoing parallel re-examination proceeding outweighed whatever marginal probative or corrective value it might have had in this case." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1343 (Fed. Cir. 2009) (applying Third Circuit law).

In *K-TEC, Inc.*, "the district court allowed the parties to offer evidence on whether the PTO had considered [a prior art reference] in finding the asserted claims patentable." *K-TEC, Inc.*, 696 F.3d at 1372. At the close of the evidence, "the court instructed the jury that while Ash was not considered in prosecution, '[a]t some time later in the proceedings, the PTO had in front of it the Ash Patent.'" *Id.* The Federal Circuit found that "it is the province of the district court to weigh those interests and determine admissibility in each case, a decision about which the court has very broad discretion." *Id.* at 1376. It then affirmed the district court's finding that "the probative value of the evidence was not substantially outweighed by the potential of the evidence to unfairly prejudice Vita-Mix, cause confusion of the issues, or mislead the jury." *Id.*

In *Callaway Golf Co.*, however, the Federal Circuit held that "the risk of jury confusion if evidence of the non-final PTO proceedings were introduced was high." *Callaway Golf Co.*, 576 F.3d at 1343. "The non-final re-examination determinations were of little relevance to the jury's independent deliberations on the factual issues underlying the question of obviousness." *Id.* The Federal Circuit reached this holding despite the defendant's argument that "allow[ing] [plaintiff] to argue ... that multiple patent examiners had reviewed the patents ... without revealing that the asserted claims stood rejected by multiple other examiners ... was entirely unfair." *Id.* at 1342.

Here, the Court finds that any reference to the reexamination or final office action would be unduly prejudicial to Wonderland without first explaining the difference in the claim

constructions applied by the PTO examiner and this Court. *See supra* § IV.B.1.c. It is true that *Callaway Golf Co.* concerned non-final PTO proceedings, whereas this case concerns a final office action by the PTO, *see* MPEP § 2673.02 (8th Ed. Rev. Aug. 9, 2012). Yet, this Court still finds, on balance, that it would be unfairly prejudicial to Wonderland for the Court to instruct the jury to evaluate and compare the PTO's claim construction against the one adopted by this Court. *See Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1385 (Fed. Cir. 2012) ("Suffice it to say here that the courts have the final say on unpatentability of claims, not the PTO."). In the Proposed Jury Instructions, for instance, the Court would be instructing the jury that they "must accept [the Court's] definition of [the claim terms] in the claims as correct." Providing the jury with another proposed claim construction by the PTO would certainly obfuscate the issues at trial.

Nonetheless, the Court recognizes the possibility that Wonderland could attempt to mislead the jury if Wonderland "impl[ies] that every expert examiner to have considered the patents had concluded that they were valid." *See Callaway Golf Co.*, 576 F.3d at 1343 (noting that defendant did not actually object to plaintiff's opening statement as unfairly prejudicial, suggesting that an objection to that effect could be sustained based on the quoted language). Accordingly, Wonderland should not advance any such arguments to the jury.

Because the trial is stayed until after the final resolution of reexamination proceedings, after which the '609 Patent will be affirmed as valid or canceled, Wonderland's Motion to Exclude references to the reexamination proceedings, (Docket No. 178), is denied, as premature.

## VI. CONCLUSION

For the aforementioned reasons,

IT IS HEREBY ORDERED that:

1. Thorley's Renewed Motion to Stay the trial in this case is GRANTED.

2. Wonderland's Motion to Exclude any references to the *inter partes* reexamination of the '609 Patent [178] is DENIED, as premature.

3. Wonderland's Objections to the Right of Appeal Notice, (Defense Exhibit D-04-346 to D-04-452), the First Office Action, (Defense Exhibit D-04-747 to D-04-777), and the Order Granting Request for Inter Partes Reexamination, (Defense Exhibit D-04-727 to D-04-742), are OVERRULED, as premature.

4. Thorley's Motion for Reconsideration [217] concerning the Right of Appeal Notice, (Defense Exhibit D-04-346 to D-04-452), the First Office Action, (Defense Exhibit D-04-747 to D-04-777), and the Order Granting Request for Inter Partes Reexamination, (Defense Exhibit D-04-727 to D-04-742), is DENIED, as premature.

5. Thorley's Objections to the Proposed Jury Instructions concerning the presumption of validity and the burden of proving invalidity of the '609 Patent by clear and convincing evidence are OVERRULED, as premature.

IT IS FURTHER ORDERED that all other provisions of the Court's previously entered Pretrial Order, dated January 16, 2013 [63], and this Court's subsequent pretrial rulings, remain in effect.

IT IS FINALLY ORDERED that,[29]

1. Any Motion for Reconsideration of this Memorandum Opinion and Order shall be filed by no later than **March 3, 2014 at 12:00 PM**;

2. Any Response shall be filed by no later than **March 10, 2014 at 12:00 PM**;

3. Any Reply shall be filed by no later than **March 17, 2014 at 12:00 PM**;

---

[29] Consistent with electronic mail correspondence with Counsel, any Motion for Reconsideration of this Memorandum Opinion and Order is due seven (7) days from the date of this Memorandum Opinion and Order. *See* PRACTICES AND PROCEDURES OF JUDGE NORA BARRY FISCHER II.M.

4.  Any Sur-Reply shall be filed by no later than **March 24, 2014 at 12:00 PM**; and

5.  Oral argument on said Motion shall occur on **April 1, 2014 at 1:30 PM** in Courtroom

    5B.

*s/ Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Date:   February 24, 2014
cc/ecf: All counsel of record.