# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WONDERLAND NURSERYGOODS CO., LTD., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Civil Action No. 12-196 ) Judge Nora Barry Fischer ) |
| THORLEY INDUSTRIES, LLC, *d/b/a* 4MOMS, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Plaintiff Wonderland Nurserygoods Co.'s ("Wonderland") Motion for Reconsideration of the Court's Memorandum Order dated February 24, 2014, (Docket No. 234), granting Thorley Industries, LLC, d/b/a 4MOMS's ("Thorley") renewed Motion to Stay, (Docket No. 219), pending the outcome of inter partes reexamination of U.S. Patent No. 8,047,609 (the "'609 Patent") (filed Dec. 3, 2010), (Docket No. 1-2 at 2), at the U.S. Patent and Trademark Office ("PTO"). Wonderland timely filed its Motion for Reconsideration on March 10, 2014, (Docket No. 239), Thorley filed a Response, (Docket No. 240), Wonderland filed a Reply, (Docket No. 241), and Thorley filed a Sur-Reply, (Docket No. 243).

The Court held a Motion Hearing on April 1, 2014, (Docket No. 244), and ordered preparation of the transcript, which was filed of record on May 13, 2014, (Docket No. 245). Upon consideration of all the filings, the transcript of the Motion Hearing [245], the Court's prior Memorandum Order [234], and for the reasons stated herein, Wonderland's Motion [239] is DENIED, as Wonderland has failed to establish that reconsideration is warranted at this time.

## I. MOTION FOR RECONSIDERATION

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). The moving party bears a heavy burden to demonstrate that an order should be reconsidered, and the Court will only grant such a motion if the moving party shows: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted [the motion]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice" *Id.* (citing *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Motions for reconsideration, moreover, should not be used to reargue or re-litigate old matters or to express disagreement with a Court's ruling. *See E.E.O.C. v. U.S. Steel Corp.*, Civ. No. 10-1284, 2012 WL 1150799, at *6-7 (W.D. Pa. Apr. 5, 2012).

Here, Wonderland has failed to meet its burden to demonstrate that reconsideration of the Court's Order is appropriate. First, Wonderland has not cited any intervening change in controlling law to warrant reconsideration since the Court issued its Memorandum Order on February 24, 2014. *See Max's Seafood Café*, 176 F.3d at 677. As previously noted, a motion for reconsideration cannot be used to reargue old matters or express disagreement with a prior ruling. *See E.E.O.C.*, 2012 WL 1150799, at *6-7. Even though Wonderland cites *VirtualAgility, Inc. v. Salesforce.com, Inc.*, a case that issued on February 27, 2014, Wonderland does not rely on this case as a basis for an intervening change in controlling law. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, Civ. No. 13-00011, 2014 WL 807588, *4 (E.D. Tex. Feb. 27, 2014).

Second, Wonderland's Motion for Reconsideration, (Docket No. 240), does not advance any new evidence that was not available when the Court granted Thorley's Renewed Motion to

Stay. *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 252 (3d Cir. 2010). "'[N]ew evidence,' for reconsideration purposes, does not refer to evidence that a party obtains or submits to the court after an adverse ruling." *Id.* "Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." *Id.* ("Nothing in the record suggests that the evidence the Plaintiffs sought to present post-summary judgment was unavailable to them when they filed their summary judgment motion. Under these circumstances, the District Court did not abuse its discretion in denying the Plaintiffs' motion for reconsideration, and we therefore will not upset that ruling.").

As to the second factor, Wonderland does not assert that the claimed new evidence of competition which it advances was unavailable prior to the Court's ruling on same. Indeed, Wonderland admits that none of its allegedly new evidence of competition was before the Court when the Court ruled on Thorley's Motion to Stay. *See* Docket No. 240 at 6-7 ("Thus, it is understandable that the Court misapprehended the extent to which Wonderland and Thorley compete; Wonderland's expert did not address competition or lost profits in 2013 so that this case would not be delayed by an attempt to revise Wonderland's damage claim."). Wonderland's proffered reason for its failure to disclose new evidence of competition was its apparent goal to "keep the case on track for trial." (Docket No. 240 at 6). Wonderland's trial litigation strategy, however, does not equate to new evidence that was previously unavailable to Wonderland. *See Howard Hess Dental Labs. Inc.*, 602 F.3d at 252.

Wonderland also asserts that it was unable to marshal evidence of direct competition "in the one day allotted for responding to the Show Cause Order." (Docket No. 240 at 11). However, Wonderland is incorrect to the extent that additional time would justify going outside the factual record to obtain new evidence of competition. Thorley maintains that Wonderland's

3

response to Thorley's interrogatory on "any product which [Wonderland] contend[s] competes in the marketplace with the mamaRoo" discloses only the Graco SweetPeace. (Docket No. 241-4 at 4). Moreover, Wonderland never supplemented its interrogatory response under Federal Rule of Civil Procedure 26(e) to include the Nuna Leaf or Glider. (Docket Nos. 241 at 7, 242).

"Rule 26(e) sets forth a party's continuing obligation to supplement its initial disclosures and responses to discovery requests, if the initial disclosures or responses are incomplete or incorrect." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 906 F. Supp. 2d 399, 412 (W.D. Pa. 2012). "Failure to abide by the disclosure requirements in these provisions is governed by Rule 37(c)(1), which provides that '[i]f a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence ... at a trial, unless the failure was substantially justified or is harmless.'" *Id.* (quoting FED. R. CIV. P. 37(c)(1)). Prior to excluding evidence, the Third Circuit has held that a district court must consider four factors: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness [sp] in failing to comply with a court order or discovery obligation." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). Although the Court does not find that Wonderland acted willfully or in bad faith, the remaining three factors weigh in Thorley's favor, as Wonderland did not disclose these new products until the actual day of jury selection; Thorley had been provided with no discovery on these products; and fact and expert discovery closed more than one year prior to said disclosures.

Furthermore, any argument that the relevant market comprises more than just the "mamaRoo and the SweetPeace" raises serious doubt as to the accuracy of the proffered

testimony of Mr. Scott Hampton ("Hampton"), Wonderland's damages expert, and opens the door to a renewed *Daubert* Motion by Thorley to exclude Hampton's testimony. Hampton issued his Expert Report on March 15, 2013, and his deposition was taken on May 16, 2013. (Docket Nos. 114, 241). Yet, Hampton did not disclose the Nuna Leaf or Glider, both of which were apparently available as of February, 2013, according to factual evidence submitted by Wonderland on March 10, 2014, more than one year <u>after</u> the close of fact discovery. (Docket Nos. 239-4 at 6, 241 at 9). Thorley maintains that even if Wonderland does not seek damages based on "new products," this strategy does not "relieve its expert of correctly identifying the scope of the market," (Docket No. 241 at 12), and this Court agrees, (Docket No. 234 at 11).

Third, Wonderland not only failed to demonstrate any clear error of law or fact, but it also failed to demonstrate the need to correct manifest injustice. *See Max's Seafood Café*, 176 F.3d at 677. Any prejudice against Wonderland due to delay from the stay pending final resolution of reexamination proceedings does not outweigh the prejudice against Thorley in the event that the patent is canceled at the PTO, for reasons already discussed at length throughout the Court's prior Memorandum Opinion of February 24, 2014.[1] (Docket No. 234).

Thus, the Court finds that reconsideration of the Court's stay is not warranted at this time.

## II.     MOTION TO LIFT STAY

In a footnote to its Reply Brief, Wonderland alternatively requests that this Court construe Wonderland's Motion for Reconsideration as a Motion to Lift Stay on the basis of new evidence of competition between Wonderland and Thorley. (Docket No. 242 at 2). Wonderland relies on a declaration from Kerry Strzelecki dated March 3, 2014, (Docket No. 239-3), a

---

[1] Counsel for Thorley represented to the Court that oral argument for the reexamination was set for June 4, 2014, with the Board's decision on the appeal expected to issue within several months from the argument date. (Docket No. 243 at 6). To that end, the Court will order the parties to meet and confer and file a joint status report by June 26, 2014 concerning the expected timeline for final resolution of the reexamination proceedings at the PTO.

declaration from Brad Bickley dated March 3, 2014, (Docket No. 239-4), and a set of videotapes that were created on February 27, 2014, (Docket No. 239-5). However, as counsel for Wonderland is aware, "[t]he power to stay proceedings 'is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Core Labs. LP v. Spectrum Tracer Servs., L.L.C.*, 532 F. App'x 904, 911 (Fed. Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). For these reasons, "[t]he Supreme Court has long recognized that district courts have broad discretion to manage their dockets, including the power to grant a stay of proceedings." *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848-49 (Fed. Cir. 2008).

To that end, "one purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled)." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) (quoting *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983)). Another purpose is to "'provid[e] the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).'" *Cooper Notification, Inc. v. Twitter, Inc.*, Civ. No. 12-1615, 2013 WL 4611752, *5 (Fed. Cir. Aug. 30, 2013) (quoting *Gould*, 705 F.2d at 1340). "[W]hen a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Fresenius USA, Inc.*, 721 F.3d at 1340. Therefore, "[w]hen a district court stays patent validity proceedings before it until completion of a reexamination proceeding, that stay must be accepted if the purpose of the reexamination statute is to be preserved." *Gould*, 705 F.2d at 1342. "In deciding whether to stay litigation pending reexamination, courts typically consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether

6

discovery is complete and whether a trial date has been set." *Soverain*, 356 F. Supp. 2d at 662; *see also Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).

Here, Wonderland's submission of new previously undisclosed factual evidence, long after the deadlines for fact and expert discovery and pretrial motions, is improper and disruptive to both Thorley and the Court, particularly when Wonderland has not established that the evidence was previously unavailable.[2] Not only has Thorley expended significant resources in defending this case on the basis that the only product in competition with the accused product is the Sweetpeace, but the Court also expended significant resources on pretrial rulings and set aside two weeks for jury selection and trial, all based upon the representations of counsel that fact discovery on the accused products was complete.[3] (Docket Nos. 60-63). Wonderland's previously undisclosed factual evidence also raises serious doubt concerning the accuracy of the proffered testimony of Mr. Hampton, Wonderland's expert witness on damages, as noted.

The stay also does not present a clear tactical advantage for Thorley because Thorley filed its reexamination request and obtained a first office action from the PTO, all <u>prior</u> to Wonderland's filing of the complaint in this case. (Docket No. 234 at 13). Wonderland contends that the Court's stay order presents a clear tactical advantage to Thorley by prejudicing Wonderland's efforts to obtain injunctive relief and appeal the Court's earlier ruling of non-infringement with respect to Claims 12 and 14 and its ruling on Claim Construction concerning

---

[2] Fact discovery closed on December 31, 2012, after two thirty day extensions, (Docket Nos.30, 50, 56), and counsel for both parties affirmed to the Court that fact discovery was complete at a status conference held on January 14, 2013, (Docket No. 60). Expert discovery closed on May 31, 2013. (Docket No. 61). Motions in limine were initially due on December 27, 2013. (Docket No. 63). Thorley also objected to the introduction of "surprise" testimony at trial concerning the allegedly competing, but previously undisclosed, products, and seeks discovery on these products to the extent that it is permitted at this late stage of the case. (Docket No. 241 at 10 n.3).

[3] To the extent that Wonderland at this late stage of the case seeks to inject new products, it is in effect requesting that the Court reopen discovery and set aside all of its prior rulings, which is highly disruptive to both opposing counsel and the Court. It bears repeating that Wonderland's failure to disclose these products during discovery was not an inadvertent mistake, but part of its trial strategy to "go to trial as soon as possible." (Docket No. 240 at 11). The Court declines to reopen discovery and set aside its prior rulings. In light of the foregoing, Wonderland can certainly file a new case setting forth its allegations concerning new claims, issues, and/or products.

7

Claims 1 and 3.[4] (Docket No. 240 at 1-2). Yet, Wonderland assumes without establishing that injunctive relief is appropriate in this case. *See Apple Inc. v. Samsung Electronics Co.*, 735 F.3d 1352, 1359 (Fed. Cir. 2013) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)) ("In accordance with the principles of equity, a plaintiff seeking a permanent injunction 'must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'"). An injunction is a "drastic and extraordinary remedy, which should not be granted as a matter of course," and the Supreme Court has cautioned that "if a less drastic remedy ... [is] sufficient to redress [a plaintiff's] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Id.* (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)). By contrast, delay alone from reexamination is insufficient to establish undue prejudice. *See Photoflex Products, Inc. v. Circa 3 LLC*, Civ. No. 04–03715, 2006 WL 1440363, *2 (N.D.Cal. May 24, 2006) ("The delay inherent to the reexamination process does not constitute, by itself, undue prejudice."). Therefore, the first factor, whether a stay will unduly prejudice or present a clear tactical advantage to the party opposing the stay, weighs in favor of Thorley.[5]

As for Wonderland's argument concerning whether a stay will simplify the issues in question and the trial of the case, Wonderland maintains that the Court has in essence confronted

---

[4] The Court also notes that "Wonderland has stated on several occasions that seeking damages was never its main objective in this case." (Docket No. 240 at 10-11).
[5] At the Motion Hearing held on April 1, 2014, counsel for Wonderland raised the possibility of making an oral motion for the Court to render final its earlier rulings of non-infringement with respect to Claims 12 and 14 and on claim construction concerning Claims 1 and 3. *See* Motion Hearing 29:18-30:10 (Apr. 1, 2014), (Docket No. 245). Counsel for Thorley indicated that he would probably not oppose Wonderland's oral motion. *See id.* 32:9-16, (Docket No. 245). However, upon further reflection, counsel for Wonderland indicated to the Court that he preferred that the Court first rule on his Motion for Reconsideration before he brought any motion to render final the Court's earlier rulings on claim construction or non-infringement. *See id.* 31:24-32:16, (Docket No. 245).

and answered the questions about admissibility of pending reexamination documents and the presumption of validity of the '609 Patent; thus, the potential for simplification does not weigh in favor of a stay. (Docket No. 240 at 18). However, Wonderland is again incorrect, as it does not account for all of the findings of the Court. To be sure, the Court made several findings that:

- The '609 Patent should remain valid at this time despite ongoing reexamination proceedings;
- The presumption of validity should still apply; and
- Thorley should prove the invalidity of the '609 Patent by clear and convincing evidence.

(Docket No. 224 at 35). However, the Court also made several other findings, including that:

- This result may seem patently unfair to Thorley because the PTO has already issued a contrary final office action;
- If the '609 Patent should be canceled, moving forward with a jury trial at this juncture could create a considerable waste of judicial resources because the patent would be null from the beginning, *see Fresenius USA, Inc.*, 721 F.3d at 1346; and
- If the validity of Claims 19-20 of the '609 Patent is affirmed, the Court can set a trial date immediately.

(Docket No. 224 at 35). Weighing these factors, the Court held that simplification weighed in favor of a stay until the final resolution of proceedings at the PTO.[6] For the aforementioned reasons, the Court finds that this factor weighs in favor of Thorley. (Docket No. 234 at 14-35).

Turning next to the third factor, the Court finds that this factor weighs in favor of Wonderland, as discovery is complete and this case was on the eve of trial. (Docket No. 234 at 36-37). Wonderland now urges the Court to consider previously undisclosed factual evidence. Such new evidence weighs against Wonderland's position that a trial should be set, because it suggests that discovery may not actually be complete.[7] Moreover, as noted in the Court's prior

---

[6] The Court also raised with the parties the possibility of taking judicial notice or stipulating to the fact of reexamination at the Final Pretrial Conference, but Wonderland was not agreeable to same. *See* Motion Hearing Tr. (Jan. 21, 2014) ("Why would they be totally confused? If there's a stipulation of fact that this patent has been reexamined, period. And this was the finding, period. Everybody should be able to agree on those facts. That happened. That's reality, right?").

[7] However, as the Court discusses in note 3, *supra*, the Court declines to reopen fact discovery and set aside its earlier rulings at this late stage of the case.

opinion, it is foreseeable that numerous sidebars and recesses could occur during trial, which might have a significant impact on the juror's ability to understand the issues in this case. (Docket No. 234).

For all of these reasons, the Court believes that a stay is necessary in this case until the final resolution of reexamination proceedings at the PTO, including any appeals to the Federal Circuit, "so that the substantial cloud of uncertainty can be cleared away." *See Rmail Limited v. Amazon.com, Inc.*, Civ. No. 10-258 (E.D. Tex. Jan. 30, 2014) (Docket No. 563 at 12-13) ("Considering the realities imposed by the co-pending litigations, the Court finds that its limited time and other resources would be better used by delaying trial of these cases as long as they rest upon such unsteady and shifting jurisdictional grounds."). Once a final resolution is reached concerning reexamination at the PTO, including appeals to the Federal Circuit, and Claims 19-20 of the '609 Patent are affirmed as valid, a new trial date can be set immediately.

### III. CONCLUSION

Based on the foregoing,

IT IS HEREBY ORDERED as follows:

1. Wonderland's Motion for Reconsideration is DENIED;

2. Wonderland's Motion to Lift Stay is DENIED;

3. The parties shall meet and confer and file by no later than **June 26, 2014 at 12:00 PM**, a joint status report concerning whether oral argument was presented before the PTO on June 4, 2014, and the expected timeline for resolution of the pending reexamination proceedings before the PTO.

4. The telephonic status conference previously set for **June 30, 2014 at 3:00 PM** shall remain as scheduled.

*s/ Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Date: June 11, 2014
cc/ecf: All counsel of record.